RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0094p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

>   *Plaintiff-Appellee,*

*v.*

No. 05-6310

RONNIE JOE DIXON,

>   *Defendant-Appellant.*

---

Appeal from the United States District Court
for the Middle District of Tennessee at Cookeville.
No. 02-00012—William J. Haynes, Jr., District Judge.

Submitted: October 31, 2006

Decided and Filed: March 8, 2007

Before: MOORE, ROGERS, and GIBSON, Circuit Judges.[*]

---

## COUNSEL

**ON BRIEF:** Peter J. Strianse, TUNE, ENTREKIN & WHITE, Nashville, Tennessee, for Appellant. Jimmie Lynn Ramsaur, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

GIBSON, J., delivered the opinion of the court, in which ROGERS, J., joined. MOORE, J. (pp. 7-8), delivered a separate dissenting opinion.

---

## OPINION

---

JOHN R. GIBSON, Circuit Judge. Ronnie Joe Dixon appeals the judgment entered on August 18, 2005, by the United States District Court for the Middle District of Tennessee. He argues that his attorney misinformed him regarding the maximum period of imprisonment possible in the event of a conviction, thereby rendering his subsequent guilty plea constitutionally invalid. He also appeals the denial of his motion to withdraw his guilty plea, arguing that he possesses a fair and just reason for withdrawing his plea and that the district court erred in denying his motion. We affirm the judgment of the district court.

---

[*] The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1

On May 8, 2002, a federal grand jury issued a nine-count indictment against defendant Ronnie Joe Dixon, charging him with one count of conspiracy to distribute and possess with intent to distribute in excess of 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); six counts of distribution and possession with intent to distribute in excess of 50 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Counts 2 through 7); and one count of being a felon in possession of firearms in violation of 18 U.S.C. §§ 2, 922(g)(1), and 924 (Count Eight). Count Nine of the indictment sought forfeiture of Dixon's property in the event of a conviction of the other counts in the indictment pursuant to 21 U.S.C. § 853.

The district court appointed Michael J. Love as counsel for Dixon on October 15, 2002. On May 23, 2003, Dixon entered a plea of guilty to Counts Six and Seven of the indictment (distribution and possession with intent to distribute in excess of 50 grams of methamphetamine) pursuant to a plea agreement arranged by Dixon's attorney and the prosecution in accordance with Rule 11(e)(1)(A) and (B) of the Federal Rules of Criminal Procedure. In accordance with the plea agreement, the government moved for dismissal of Counts One, Two, Three, Four, Five, Eight, and Nine of the indictment. At the May 23, 2003, plea hearing, Dixon testified that he was satisfied with Love's performance as counsel and that Love had discussed the charges against Dixon. Dixon also testified that Love had disclosed to Dixon the government's evidence.

On January 14, 2004, Dixon moved to substitute Peter J. Strianse as counsel of record, replacing Love. On April 29, 2005, Dixon moved to withdraw the May 23, 2003, plea agreement. In his motion, Dixon maintained that his previous counsel, Love, did not provide Dixon with all of the discovery received from the government before Dixon's plea. Dixon also maintained that he had difficulty understanding the plea agreement and the plea colloquy and that due to a physical impairment, he had difficulty hearing the district court's questions and comments. Dixon also stated that due to heart problems, he had suffered from memory lapses for nearly 18 years.

During the May 13, 2005, hearing on his motion to withdraw his guilty plea, Dixon testified that he had never seen discovery for Counts One through Five alleged in the indictment. Specifically, Dixon denied ever seeing any discovery regarding Patrick Carver, a government witness. At a status conference on April 14, 2003, the government filed a motion to continue trial, or in the alternative, to dismiss the indictment without prejudice. Dixon denied having knowledge of the potential for a dismissal of the indictment without prejudice. Dixon, however, did state that he heard a conversation between Love and the Assistant United States Attorney, Jimmie Lynn Ramsaur, regarding problems with Carver's testimony. According to Dixon, Love informed him that despite the problems the government was having with Carver, the government would still be interested in pursuing its charges against Dixon and the situation would deteriorate if Dixon did not plead guilty.

Dixon testified that his decision to plead guilty was in part motivated by concerns for his family. According to Dixon, Love informed him that if he pleaded guilty, the government would not prosecute his son and Dixon would not forfeit his property. Dixon also testified that he was only able to review the petition to enter a plea agreement a few minutes before the plea hearing because of a missed meeting that morning with Love. According to Dixon, this was the only time that Dixon and Love met to prepare for the hearing.

Love also testified at the hearing to withdraw Dixon's guilty plea. Love testified that he had received the discovery and reviewed the materials with Dixon. Love denied telling Dixon that the government threatened to prosecute Dixon's son, but did testify that he and Dixon had discussed the possibility of such a prosecution. According to Love, after Love received the government's plea offer, Dixon came to Love's office to review the offer. The two of them reviewed the plea offer "paragraph by paragraph, line by line, word by word." Love also sent a follow-up letter to Dixon that offered an estimate of Dixon's sentence. Love testified that he spoke with Dixon on three

separate occasions about the contents of the government's offer as well as the plea petition. Love concluded that while he had some initial concerns about Dixon's memory, he "was satisfied that [Dixon's] memory was intact, that he understood what the process was, he understood what he was pleading to, and he understood why he was doing it." When questioned about the possible sentence that Dixon might receive if convicted on Count Eight of the indictment, Love testified that he told Dixon that being a felon in possession of a firearm carried a "flat five year sentence." Love, however, in a May 26, 2005, affidavit, denied making misstatements regarding Dixon's possible exposure and stated that any claim that he "improperly advised Mr. Dixon of maximum sentences, or coerced his plea with a false incentive by an inaccurate depiction of possible sentences if Mr. Dixon should go to trial, is grossly inaccurate and not grounded in fact."

On July 20, 2005, the district court issued a memorandum opinion denying Dixon's motion to withdraw his guilty plea. The district court in its memorandum opinion did not deem Dixon's testimony credible. The district court also was unconvinced that Love in fact gave Dixon erroneous information regarding the dismissed charge. As well, the district court noted the following:

> Defendant waited almost two years to move to withdraw his plea and has not given credible reasons for the delay. The Defendant has not maintained his actual innocence. The circumstances of the plea agreement were that a government witness disavowed his earlier statements. That fact enable [sic] the defendant to bargain for a dismissal of five other counts. The Defendant also got a motion for a downward departure. There is prejudice to the government because if the plea were withdrawn, the Government would lose the benefits of its bargain in a weakened case. The Defendant has a prior state conviction and is familiar with the criminal justice system.

The district court on August 18, 2005, sentenced Dixon to 46 months imprisonment, followed by four years of supervised release. Dixon now brings the present appeal.

## I.

The issue of whether a plea was knowing, voluntary, and intelligent is a legal question that this Court reviews de novo. *United States v. Jones*, 403 F.3d 817, 822-23 (6th Cir. 2005) (quoting *United States v. Walker*, 160 F.3d 1078, 1095-96 (6th Cir. 1998)). The underlying factual bases relied upon by the district court are reviewed for clear error. *United States v. Osborne*, 402 F.3d 626, 630 (6th Cir. 2005) (citing *United States v. Jackson*, 181 F.3d 740, 744 (6th Cir. 1999)).

A guilty plea is valid if it is entered knowingly, voluntarily, and intelligently by the defendant. *Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). A district court, in accordance with Rule 11 of the Federal Rules of Criminal Procedure, must verify that "the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005) (citing *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988)). The sole basis for Dixon's argument that his plea was invalid is the alleged misstatement by his attorney regarding the potential sentence under Count 8 of the indictment. Dixon argues that any misstatement regarding his potential exposure in case of conviction is sufficient to render the guilty plea invalid. *See Pitts v. United States*, 763 F.2d 197, 201 (6th Cir. 1985) (holding that "affirmative misstatements of the maximum possible sentence" are sufficient to invalidate a guilty plea if the misstatements are material to defendant's decision to plead guilty).

The question of whether Dixon's plea was invalid rests on the district court's determination that Love misspoke during Dixon's hearing, but never gave Dixon erroneous advice concerning Dixon's potential sentence. At the hearing to withdraw the guilty plea, the Assistant United States Attorney asked Love whether he was "aware that a felony possession charge would carry a consecutive five year sentence to anything else [Dixon] might have received." Love responded in the affirmative.[1] Later, Dixon's new counsel, Peter Strianse, again questioned Love on the possibility of Dixon's receiving a five year sentence. Love confirmed that it was his impression that Count 8 of the indictment carried a five year minimum sentence, but he was unsure as to whether the sentence would necessarily run consecutively to the other charges. On redirect, the Assistant United States Attorney confirmed with Love that Count 8 of the indictment charged Dixon with violating 18 U.S.C. § 922(g). When asked, however, about the penalty for a § 922(g) violation, Love admitted that he was "a little confused."

Following Love's testimony, the district court expressed concern over the impact of Love's potentially erroneous advice. The district court was particularly worried that Love had informed Dixon that a conviction under Count 8 of the indictment would result in a consecutive sentence, thereby overestimating Dixon's potential exposure in the event of a conviction. Love, in his May 26, 2005, affidavit, sought to explain his testimony during the motion to withdraw the guilty plea. He stated that his testimony concerning Count 8 "was premised on [Assistant United States Attorney] Ramsaur providing a correct depiction of the relevant count at issue." He attributed his testimony to the fact that he was "surprised by the question ... and confused by the cross-examination that followed." In the memorandum denying Dixon's motion to withdraw the guilty plea, however, the district court expressed satisfaction with Love's explanation for his previous testimony. The district court stated that Love "clarified that he accurately gave the Defendant the correct information on the dismissed charge."

There is no basis for concluding that the district court committed clear error in its factual determination.[2] The district court was able to observe firsthand Love's demeanor during the hearing and decided that the subsequent explanation Love offered for his testimony was credible in light of all of the circumstances. We have noted before that "[f]indings of fact anchored in credibility assessment are generally not subject to reversal upon appellate review." *United States v. Ivy*, 165 F.3d 397, 401 (6th Cir. 1998) (internal quotation marks omitted). In fact, "when there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Id.* at 401-02. Considering the uncertainty with which Love testified during the hearing, we are unable to say that it was clearly erroneous for the district court to accept Love's subsequent affidavit to the court. We therefore hold that on the basis of the record, Dixon's guilty plea was not invalid.

## II.

Dixon argues that the district court erred in denying his motion to withdraw his guilty plea. We review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998). It is the defendant's burden to demonstrate that proper grounds exist for the granting of such a motion. *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987).

---

[1] 18 U.S.C. § 924(a)(2) actually provides that a person who knowingly violates § 922(g) "shall be fined as provided in this title, imprisoned not more than 10 years or both."

[2] Because we conclude that the district court did not commit clear error in accepting Love's subsequent explanation of his testimony during the motion to withdraw the guilty plea, we have no need to determine the extent of the prejudice suffered, if any, by Dixon in the event of a misstatement by Love.

In order to withdraw a guilty plea before sentencing, a defendant must "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).  The purpose of Rule 11(d) is to allow a "hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (internal quotation marks omitted).

We consider a number of factors in determining whether Dixon can provide a fair and just reason for withdrawal of his guilty plea.  These include the following:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Pluta*, 144 F.3d at 973 (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)).  We will discuss each factor in turn.

The first factor weighs heavily against Dixon.  As we have stated before, "The shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (quoting *Triplett*, 828 F.2d at 1197).  Dixon pleaded guilty to Counts Six and Seven of the indictment on May 23, 2003, nearly two years before moving to withdraw his guilty plea on April 29, 2005.  We have frequently relied on much shorter delays for upholding a withdrawal denial.  *See*, *e.g.*, *United States v. Durham*, 178 F.3d 796, 799 (6th Cir. 1999) (77 day delay); *Baez*, 87 F.3d at 808 (67 day delay); *Goldberg*, 862 F.2d at 104 (55 day delay); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (thirty-five-day delay).  In the instant case, the considerable time that elapsed between Dixon's plea and his motion to withdraw his plea supports the district court's decision to deny his motion.

Regarding Dixon's justification for the delay, he argues that it is not attributable to a "lack of candor or duplicity"on his part, but rather to "the unusual number of continuances granted in this case and the Defendant's own bad health."  This explanation for the delay in requesting a withdrawal of Dixon's guilty plea is unpersuasive.  Dixon fails to explain in any detail why the repeated continuances, which were obtained by Dixon's counsel, prevented Dixon from filing a motion to withdraw his guilty plea at an earlier time, assuming that there was always a fair and just reason for Dixon to withdraw his plea.  Absent further explanation, the two-year delay would appear to be "beyond the bounds of the time frame ordinarily considered appropriate for motions to vacate." *Alexander*, 948 F.2d at 1004 (referring to a five-month delay).

The third factor also does not weigh in Dixon's favor.  Dixon argues that he stated "at the hearing on the motion to withdraw the plea that he was innocent of the charges to which he pled." An examination of the record, however, reveals some vacillation on the part of Dixon.  When asked by the government at the hearing on the motion to withdraw the guilty plea whether he was not guilty of Counts Six and Seven, Dixon stated that "I am saying I'm going to plead not guilty." When asked whether he was telling the district court that he was not guilty, Dixon did answer in the affirmative.  When asked, however, about the factual bases of Counts Six and Seven, Dixon asked to speak with his attorney and eventually replied that "I will just not answer that question."  This exchange is a far cry from the "vigorous and repeated protestations of innocence" that would support

a motion to withdraw a guilty plea. *Baez*, 87 F.3d at 809. The record belies Dixon's argument that he has consistently and vigorously maintained his innocence.

Dixon argues that the fourth factor weighs in his favor. As we have already discussed, however, the district court concluded that there was no factual basis to allegations of misstatements by Love regarding Dixon's possible exposure under the indictment. Apart from those allegations, there is little in the record to indicate that Dixon's guilty plea was suspect. The district court explained in its memorandum that during the plea colloquy Dixon "did not express any dissatisfaction with his counsel and denied any coercion by his counsel or any representative of the government; including threats to his family.... After accepting the plea, the Court asked if the Defendant had any reservations about submitting his plea and the Defendant said no." Considering that we have already determined that it was not clearly erroneous for the district court to accept Love's explanation of the hearing to withdraw the guilty plea, we must conclude that there are no circumstances surrounding the guilty plea that would provide Dixon with a fair and just reason for withdrawal.

The fifth factor arguably weighs in Dixon's favor. He has hearing difficulties as well as a history of heart ailments. The sixth and seventh factors weigh against Dixon. As the district court noted, Dixon "has a prior state conviction and is familiar with the criminal justice system." Also, as noted previously, Dixon filed his motion for withdrawal nearly two years following entry of a guilty plea. This delay is prejudicial to the government's ability to mount a case against Dixon.

## III.

Reviewing the relevant factors, we conclude that Dixon has not met his burden of offering a fair and just reason for withdrawing his guilty plea. A two-year delay is significant, and absent compelling reasons to overlook such a delay, we conclude that the district court did not abuse its discretion in denying his motion to withdraw. We also conclude that Dixon's guilty plea was knowing, voluntary, and intelligent. For the foregoing reasons, we AFFIRM the judgment of the district court.

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting. Because the record does not clearly indicate that the attorney who advised Dixon during plea negotiations denies having given Dixon erroneous advice concerning the sentencing range applicable to the firearm-possession charge, I would remand for a further evidentiary hearing, and therefore I respectfully dissent.

During the evidentiary hearing on Dixon's motion to withdraw his plea agreement, his former attorney, Michael J. Love, testified that he had advised Dixon during plea negotiations that, if convicted of Count Eight (the firearm-possession charge, which was ultimately dismissed pursuant to the agreement), Dixon would be subject to a five-year mandatory-minimum sentence that would run consecutively with any other sentence handed down. Notably, during that hearing, Love did not merely agree with the Assistant United States Attorney's characterization of the sentencing implications of the firearm charge and the impact of the charge on Dixon's decision to accept the offered plea agreement. Rather, Love affirmatively and repeatedly stated that he had specifically advised Dixon that the minimum sentence that Dixon would face if convicted of the firearm charge was five years' imprisonment and that that fact was important in persuading Dixon to accept the plea bargain.

Love's testimony included the following statements: "It would carry a five year sentence, whether it was consecutive or not, it's a flat five year sentence. That's how I would have conveyed it to the client." "I believed it to be a flat sentence at that time." "I wouldn't have said 60 months. I believe I said five years." "If he was convicted of that count, it was my understanding that it was a five year sentence, it was a flat sentence, that the Court didn't have any discretion to lower that sentence. The statutory penalty is five years." Joint Appendix ("J.A.") at 151-53 (Tr. of Hr'g on Mot. to Withdraw at 86-88). When asked whether he had advised Dixon that avoidance of the firearm charge was a great benefit of the offered plea, Love responded, "...yes." J.A. at 153 (Tr. of Hr'g on Mot. to Withdraw at 88). He testified that the five-year sentencing provision "was a big consideration" and that "it was [Love's] estimation that [Dixon] was going to be well-served by getting that charge dismissed rather than trying to go to trial on that issue." J.A. at 132 (Tr. of Hr'g on Mot. to Withdraw at 67).

Following the hearing, however, Love submitted an affidavit to the district court, to the effect that his testimony regarding the sentencing range applicable to the possession charge had been erroneous and the result of a misunderstanding. He concluded:

> I believe that the resulting depiction in argument: that advanced a notion that I improperly advised Mr. Dixon of maximum sentences, or coerced his plea with a false incentive by an inaccurate depiction of possible sentences if Mr. Dixon should go to trial, is grossly inaccurate and not grounded in fact.

J.A. at 49-50 (Love Aff. at 1-2). In its subsequent Memorandum Order denying Dixon's motion to withdraw his plea, the district court stated, referring to Love's affidavit, that "Defendant's former attorney clarified that he accurately gave the Defendant the correct information on the dismissed charge." J.A. at 54 (Dist. Ct. Mem. at 2).

The district court's finding is not supported by the record and therefore constitutes an abuse of discretion. Love never explicitly repudiated his statements, made under oath at the evidentiary hearing, that he had advised Dixon that the minimum sentence for the firearm violation was five years and that Dixon had relied upon that advice in accepting the plea offer. Moreover, his

subsequent assertion, in his affidavit, of a "belie[f]" that he gave accurate advice suggests, in fact, that he cannot remember exactly what he told Dixon more than three years ago. In any event, his credibility is at least undermined by his willingness to testify, at the motion hearing, to specific details that he apparently did not remember.

Under these circumstances, I would **REMAND** this case to the district court for an evidentiary hearing to determine precisely what Love told Dixon regarding the sentencing provision applicable to the firearm-possession charge and the impact of any inaccurate advice on Dixon's decision to accept a plea. *See Pitts v. United States*, 763 F.2d 197, 200-01 (6th Cir. 1985) ("An evidentiary hearing is needed on this issue to determine whether the . . . misstatement was material to [defendant's] decision, or, in other words, to determine whether [defendant] would not have pleaded guilty but for the misstatement."). Accordingly, I respectfully dissent.