NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0381n.06
Filed: June 8, 2007

No. 06-6004

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MARILYN POWELL, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

**Before: NORRIS, GILMAN, and SUTTON, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge**. Marilyn Powell, also known as Marilyn Powell Cook, pled guilty on April 14, 2005 to three counts of making false, fictitious, or fraudulent claims against the United States. Six days later, she filed a pro se motion to withdraw her guilty plea. The district court denied her motion, concluding that Powell had not met her burden of showing a fair or just reason to warrant withdrawal. Powell was subsequently sentenced to 48 months of imprisonment. She has timely appealed the denial of her motion to withdraw. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

Powell established Sheep Ministries, Inc. in Knoxville, Tennessee in December of 2001. Through Sheep Ministries, Powell delivered faith-based messages and promised various forms of

financial support to indigent persons. Powell conditioned the receipt of such benefits, however, on a form that required the applicant to disclose his or her name, social security number, and other identifying information. She also sent correspondence under the auspices of the ministry to prisoners, obtaining similar information by promising various forms of financial assistance. According to the Presentence Report (PSR), Powell used this information to file false tax returns on behalf of these individuals with the Internal Revenue Service (IRS). Powell then directed the IRS to deposit the tax refunds from these false returns into a bank account that she controlled.

Throughout her time with Sheep Ministries, Powell was on supervised release after having served a prison sentence for a previous federal mail fraud conviction. Her lengthy criminal record dates back to 1993. She has pled guilty on six different occasions to various charges since that date, including passing bad checks, credit card fraud, and mail fraud.

In February of 2005, a federal grand jury returned an indictment against Powell, charging her with 18 counts of making false, fictitious, or fraudulent claims against the United States, in violation of 18 U.S.C. §§ 2 and 287. At Powell's pretrial detention hearing, the government asserted that the loss to the government, as charged in the indictment, was approximately $22,000. The government also argued that there was similar uncharged fraudulent conduct during the time alleged in the indictment that resulted in tax-refund requests of over $200,000. Powell did not testify at the hearing.

On April 14, 2005, pursuant to a written plea agreement, Powell pled guilty to three counts of the indictment. The remaining charges were dismissed in exchange for her plea. At the plea hearing, Powell gave her name as Marilyn Powell Cook. Because Powell had previously signed the

plea agreement and an accompanying document titled "Agreed Factual Basis" as Marilyn Powell,

the government asked the court to have Powell state on the record that she was in fact the individual

who signed both the plea agreement and the Agreed Factual Basis. Powell did so.

During the plea colloquy, the government provided the factual basis for the fraud charges,

including the following statement:

> [F]rom approximately July of 2001 to August 2002, Ms. Cook prepared and presented to the IRS what reported [sic] to be Federal Individual Income Tax Returns for all individuals that are named in the Agreed Factual [B]asis filed with the Court today for a total of two hundred fourteen thousand eight hundred seventy-two dollars in falsely claimed tax refunds.

> Of that amount, Your Honor, that Ms. Cook falsely claimed, she in fact received fifty-nine thousand eight hundred sixty-five dollars and twenty-eight cents.

Powell's attorney made no objection to the government's summary of the factual basis for

the plea. The district court then confirmed with Powell that she understood the government's case

against her. After Powell agreed in open court with the government's statement of her conduct, she

pled guilty to three counts of the indictment. Powell also specifically said that she understood what

she was pleading guilty to and that she was offering to plead guilty because she was in fact guilty.

The court then scheduled a sentencing hearing for August 1, 2005.

On April 20, 2005, six days after Powell pled guilty, she sent a letter to the district court

declaring that she would like to withdraw her guilty plea. The court construed the letter as a motion

to withdraw and scheduled a hearing date. At the hearing, Powell gave the following reasons for

wanting to withdraw her plea:

> April the 15th a newspaper article came out, and this information is totally different from the plea that Mr. Tollison went over with me []. Right now, there's different versions of the plea out there. I don't know which one you have. I don't know where the one is at that I signed on the 14th in your courtroom, and I don't know which one the Clerk has on file. But one of those pleas are [sic] forged, that is not my signature, and I'm just trying to find out which one is the plea that I signed.
>
> Because the one that Mr. Tollison gave me on April the 25th is not my signature. I never saw Mr. Tollison on the 13th, I never saw Mr. Hamilton on the 13th.

Powell's counsel cleared up the date confusion by explaining that although the plea agreement was in fact signed on April 14 in open court, the date written on the agreement itself was erroneously listed as April 13. The district court sua sponte ordered a competency evaluation for Powell before deciding whether to grant her motion to withdraw the plea. Powell was adjudged competent to proceed.

At the change-of-plea hearing, Powell once again asserted that the signature on the plea agreement was not hers. After being shown both the plea agreement and the Agreed Factual Basis, however, she conceded that she had in fact signed the plea agreement, but that she had done so without first reading it, and that what was contained in the agreement was far different from the terms that her lawyer had discussed with her two days before. But she continued to contend that the signature on the Agreed Factual Basis was not hers. Powell also argued that she never agreed to the figure of over $200,000 in intended loss attributable to her through relevant conduct, and that the amount she received as a result of her fraudulent conduct was closer to the amount stated in the original indictment ($22,000) than the approximately $60,000 claimed by the government.

At no time, however, did Powell contest her guilt. The government called Powell's first lawyer, Kim Tollison, who testified that Powell had signed both the plea agreement and the Agreed Factual Basis, and that those documents had been submitted to the clerk for filing. Tollison also asserted that he had discussed the terms of both the plea agreement and the Agreed Factual Basis with Powell before she signed them.

After hearing argument from both the defense and the prosecution, the district court gave the following rationale for denying Powell's motion to withdraw her guilty plea:

> I do not find a fair and just reason to allow you to withdraw your plea of guilty in this case. You seem to forget that I was the judge who presided at the hearing where you entered your plea of guilty. As far as papers being switched after you signed them, I can see both counsel tables. I know that that did not happen. Now, I am not sure what the purpose of or the reason for your confusion is, but I know for a fact that that did not occur.

The court articulated several other grounds for denying the motion, including the fact that Powell had not asserted a defense or maintained her innocence, and that she had impressed the court as being intelligent and having a calm demeanor at the time of her plea. This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

We review a district court's denial of a motion to withdraw a guilty plea under the abuse-of-discretion standard. *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007). The burden is on the defendant to "demonstrate that proper grounds exist for the granting of such a motion." *Id*.

### B. Motion to withdraw a guilty plea

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, Powell must "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "The purpose of Rule 11(d) is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Dixon*, 479 F.3d at 436. (quotation marks omitted).

This court has articulated a multi-factor inquiry to assess whether a defendant has provided a fair and just reason that warrants the withdrawal of his or her guilty plea. These factors are:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.*

Powell argues that the short time between the entry of her plea and the motion to withdraw weighs heavily in favor of granting the motion. To be sure, this court has previously held that "[t]he shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996). Powell thus makes a valid point, but this one factor is not dispositive. The district court is required to weigh the time-lapse factor with all of the other factors. Moreover, this court has affirmed the denial of a

motion to withdraw where as few as three days had elapsed between the entry of the plea and the motion to withdraw. *United States v. Rankin*, No. 95-3112, 1996 WL 464982, at *3 (6th Cir. Aug. 14, 1996) (holding that the district court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea where "the court considered and made findings as to the relevant factors, and explained its decision to accord more weight to certain of those factors").

Upon a review of the remaining factors, we conclude that the district court did not abuse its discretion in denying Powell's motion to withdraw her plea. The "second factor for district courts to consider is why the grounds for withdrawal were not presented to the court at an earlier point in the proceedings." *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987). Powell's claim—that her signature on the plea agreement and on the Agreed Factual Basis was somehow forged—could not have been presented earlier, so this factor weighs in her favor. The district court found, however, that Powell's forgery claim was completely without merit. Indeed, Powell signed the documents in open court under the observation of the district judge. And Kim Tollison, the attorney who represented Powell at the time of the plea, testified that he had advised her of the content of both the Agreed Factual Basis and the plea agreement itself, and that he had witnessed Powell sign both documents.

The third factor, whether the defendant has asserted or maintained his or her innocence, weighs heavily against Powell. She has not asserted any defense or claimed that she is innocent. *See United States v. Mader*, 251 F.3d 1099, 1106 (6th Cir. 2001) ("Given that Mader has never denied that he committed the acts underlying the charges against him, it was not an abuse of discretion for the lower court to deny his motion to withdraw his guilty plea."). Rather, Powell's

objection to the plea agreement has to do only with the amount of loss attributed to her for purposes of sentencing and with the amount of restitution that she will be required to pay. We fail to see how either of these amounts could be a surprise, because they were stated in her plea agreement and announced in open court. Immediately after the government recited the amount of loss and the amount of restitution, the district court asked Powell if she understood everything. She responded that she did.

The fifth factor, the defendant's nature and background, also weighs against Powell, as does the sixth factor, the degree to which the defendant has had prior experience with the criminal justice system. Powell is a repeat offender, and she committed the fraud in the present case while on supervised release from another federal mail fraud conviction. She has pled guilty on six different occasions since 1993 and thus has more experience than most defendants with the criminal justice system. Moreover, Powell is by all accounts an intelligent woman with a high school degree and with some amount of college education. We agree with the district court's conclusion that Powell was more than capable of understanding the charges against her, of reading the plea agreement, and of reading the Agreed Factual Basis for the plea.

The seventh factor—the potential prejudice to the government if the motion is granted—need not be evaluated in the present case. Although the district court may consider this factor, "the government is not required to establish prejudice that would result from a plea withdrawal, unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal." *Spencer*, 836 F.2d at 240. Powell has not done so here.

Finally, Powell asserts two novel claims in support of her appeal. She first argues that the district court's decision to order her to undergo a mental-health evaluation before ruling on her motion somehow demonstrates that the court abused its discretion in ultimately denying her motion. We fail to see how this demonstrates anything other than the district court's concern about whether Powell was competent to assist in the management of her own case. Powell, moreover, offers no caselaw in support of this claim.

Powell's second novel claim is that the district judge should have recused himself pursuant to the Code of Conduct for United States Judges, Canon 3(C)(1)(a). This Canon states that a judge shall disqualify himself or herself when the judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." Powell argues that, but for the judge's "testimony" that he witnessed Powell sign the plea agreement and the Agreed Factual Basis, the outcome of the motion to withdraw the guilty plea would have been different. Specifically, Powell objects to the district judge's having considered his own recollection of previous hearings when making findings of fact as to the authenticity of the plea agreement and the Agreed Factual Basis, as well as to the judge's having decided whether those documents were signed by Powell.

Because Powell raises this issue for the first time on appeal, we apply the "plain error" standard of review. *United States v. Mahon*, 444 F.3d 530, 532 (6th Cir. 2006). The plain-error inquiry under Rule 52(b) of the Federal Rules of Criminal Procedure is a four-step process:

> First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, we must then consider

whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings.

*Id.* at 533.

Because we conclude that the district court committed no error at all, our plain-error inquiry is complete. This court has held, in a different context, that a district judge may rely on his or her own recollections when deciding a motion. *See Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006) ("It may not be necessary to call the district judge as a witness, as Petitioner suggests, because a district judge simply may rely on his or her recollections of the criminal proceedings in deciding a [28 U.S.C.] Section 2255 motion without testifying."). Moreover, the district judge's recollections in the present case were not the only evidence refuting Powell's forgery claim. Powell's own defense attorney testified that Powell had signed the plea agreement and the Agreed Factual Basis that he had previously discussed with her. There is simply no merit to Powell's argument.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.