**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0616n.06

**No. 09-4179**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Northern |
| LUIS ALBERTO MENDOZA-ALMENDAREZ, | ) | District of Ohio |
| | ) | |
| Defendant-Appellant. | ) | |

**FILED**

**Aug 25, 2011**

LEONARD GREEN, Clerk

Before:     BOGGS and CLAY, Circuit Judges; and TARNOW, Senior District Judge.[*]

BOGGS, Circuit Judge.  Appellant Luis Alberto Mendoza-Almendarez ("Mendoza") appeals the district court's denial of his motion to withdraw his guilty plea.  Mendoza alleges that he believed that his plea agreement, which recommended a twenty-year sentence, was "fake" and intended to cover up, for the safety of himself and his family, the fact that he would, in the future, cooperate with the government in exchange for a lesser sentence.  When that cooperation did not occur, Mendoza sought to withdraw the plea, alleging that he was misled by his attorney and the government about the process.  We affirm the district court's denial of Mendoza's motion, because Mendoza made a tactical decision to enter the plea and can show no just reason for the withdrawal.

---

[*]The Honorable Arthur J. Tarnow, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

No. 09-4179
*United States v. Mendoza-Almendarez*

                                        I

Mendoza was investigated for involvement in a drug-trafficking conspiracy that delivered cocaine and heroin from the West Coast to Ohio. Wiretaps revealed that the deliveries were orchestrated by someone known as "Joe Diaz," but the government initially could not identify that person. One of the participants in the conspiracy, Delores Borquez-Willis, was convicted and agreed to cooperate with the government while awaiting sentencing. In February 2008, she identified "Joe Diaz's" voice as that of Mendoza and agreed to testify before a grand jury. Mendoza was then indicted by the grand jury on April 23, 2008, for conspiracy to possess with intent to distribute cocaine and heroin, in violation of 21 U.S.C. § 846.

On May 27, 2008, Mendoza entered a plea of not guilty. His appointed counsel, Damian Billak, withdrew from the case in July 2008, and the court appointed new counsel, Jaime Serrat. Mendoza's trial was scheduled for November 19, 2008. On November 18, 2008, the court held a colloquy with Mendoza, in which he declined to accept a plea agreement. The morning of November 19, 2008, Mendoza's attorney received a copy of Borquez-Willis's grand-jury testimony, pursuant to the the Jencks Act, 18 U.S.C. § 3500. As jury selection was about to begin, Mendoza indicated that he wished to enter into a plea agreement after all. After a plea colloquy, he signed an agreement in which he and the government recommended a twenty-year mandatory minimum sentence. The agreement did not discuss possible cooperation with the government. During the plea colloquy, Mendoza stated that he understood the agreement and admitted its factual basis. After Mendoza's plea hearing, the district court sentenced Borquez-Willis to time served and three years of supervised release. She then returned to her home in California.

Mendoza fired Attorney Serrat and, on January 20, 2009, filed a notice of intent to file a motion to withdraw his guilty plea. This was sixty-two days after the plea was entered. He filed the motion to withdraw on February 17, 2009. After the district court denied the motion, Mendoza renewed it, and the district court held an evidentiary hearing.

During the evidentiary hearing, Mendoza testified that he entered the plea because Attorney Serrat and the prosecutor misled him into believing that the plea agreement he entered into "on the record" was "going to be different from things that were off the record . . . dealing with cooperation." He explained that he had been told by Serrat that, although the plea agreement would contain no reference to cooperation, he was to cooperate with the government in exchange for a sentence of less than the twenty years provided for in the agreement. He would not "really be held liable to th[e] plea agreement." Mendoza pointed to a letter of July 8, 2008, from the prosecutor to his first attorney which stated, "I understand the importance and need for confidentiality in this case and believe a mutually favorable resolution can be struck without a reference or hint of cooperation in the plea agreement, presentence report, and/or court record." The letter also stated that the U.S. Attorney's Office's "usual approach in cases of this type is (1) to permit a plea without cooperation to a mandatory minimum twenty years, or (2) to 'back-down' from the twenty years should the defendant offer substantial assistance." Mendoza further testified that only later did he realize that the plea agreement was truly binding. He contended that he would not have entered a plea had he known that the agreement was binding and suggested that his attorney had colluded with the prosecutor.

On cross-examination, Mendoza admitted that he had pled guilty to federal and state charges in the past, although he had "never dealt with cooperation" before. He also testified that, in

preparation for his case, he and Attorney Serrat listened to nine hours of wiretap recordings. Mendoza further admitted that at the time he entered the plea agreement, he had not given any information to the government, and he acknowledged that the government would have had to evaluate any information he provided before determining what sentencing recommendation it would make. Mendoza stated that, when he met with the prosecutor after entering the plea, he told the prosecutor that he was expecting to receive a sentence of zero to seventy-four months in exchange for his cooperation. Mendoza also admitted that, during the plea colloquy, the court told him he was facing a mandatory minimum of twenty years, and that at that time he had acknowledged that there was a factual basis for the guilty plea. He maintained, however, that he believed the plea colloquy was "a tactical move [by] the government to cover up [his] cooperation."

Continuing to cross-examine Mendoza, the government questioned him about facts detailed in the plea agreement that he had admitted were true during the plea colloquy, such as the fact that he was stopped in a car with a hidden compartment containing $481,790 in drug-trafficking proceeds. Mendoza denied that the money was drug-trafficking proceeds. Because he wanted to avoid "incriminating" himself, he refused to say whether various other statements in the plea agreement were true, including that he distributed 120 kilograms of cocaine in 2004–05 and that he had told a co-conspirator by phone to be ready for a shipment of cocaine and heroin.

Attorney Serrat testified that Mendoza "knew the case inside and out," "is very experienced in federal law and Sentencing Guidelines," and knew what penalties he would face were he convicted, including a possible life sentence. The main issue Serrat discussed with Mendoza in preparation for trial was who the government would use to identify Mendoza's voice on the wiretap.

One of the few people who could identify Mendoza was Borquez-Willis. The morning of trial, Serrat received a copy of Borquez-Willis's grand jury testimony. He realized that she would testify and shared the information with Mendoza and his wife. Serrat and Mendoza agreed that Mendoza had little chance to escape conviction.

Serrat testified that, until that point, Mendoza had no interest in plea negotiations. He confirmed that Mendoza read and initialed a proposed plea agreement on November 18, 2008. Serrat said that he told Mendoza that, to receive a sentence of less than twenty years, Mendoza would have to make a proffer of evidence that would be evaluated by the government. He denied telling Mendoza that the plea agreement would be "fake." Serrat said that neither he nor the prosecutor knew what kind of information Mendoza might be able to provide to the government. After the plea was entered, Serrat and Mendoza met with the government to discuss the possibility of cooperation. According to Serrat, Mendoza "was very adamant about wanting the government to tell him what they could do for him" before making a proffer, and as a result the discussion "never got anywhere."

The prosecuting attorney testified that, although he told Attorney Billak that Mendoza's cooperation could be hidden to preserve his safety, Mendoza was never told that the plea agreement was "fake." The government was willing to accept a proffer from Mendoza, but Mendoza never made one, instead demanding to know "what was in it for him."

The district court found that, "[c]ontrary to Mendoza's subsequent contentions, Attorney Serrat never told Mendoza that the plea proceedings would be fake and of no effect." During the plea colloquy, the court reviewed with Mendoza the terms of the plea agreement, which provided for a twenty-year sentence. The court further found that "Mendoza has extensive knowledge of the

criminal justice system, both on the state and federal levels, and actively participated in the strategies and pleadings that have been filed in this case." Finally, the court found that "at no time has the defendant ever contended that he was not the 'Joe Diaz' of the intercepted . . . conversations, nor does he ever deny that he was involved in the massive conspiracy" to traffic in cocaine and heroin. Based on these findings, the court concluded that, "considering the fact that the defendant has never asserted a defense, the length of time between the entry of his guilty plea and the motion to withdraw the guilty plea, the failure of the defendant to present grounds for withdrawal of the guilty plea at an earlier time," and the fact that the government might suffer prejudice if it was unable to produce Borquez-Willis to testify in a future trial, as she had been sentenced and had returned to California, Mendoza's motion to withdraw his guilty plea lacked merit. Mendoza was sentenced to 262 months of imprisonment.

II

We review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007). "A district court abuses its discretion where it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (internal quotation marks omitted). Where "there are two permissible views of the evidence," we cannot call the district court's choice of one view "clearly erroneous," and "[f]indings of fact anchored in credibility assessment are generally not subject to reversal" on appeal. *Dixon*, 479 F.3d at 435–36 (quoting *United States v. Ivy*, 165 F.3d 397, 401–02 (6th Cir. 1998)).

When a defendant has voluntarily entered a guilty plea but seeks to withdraw it before his sentence is imposed, the Federal Rules of Criminal Procedure require him to "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *see also United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998) (explaining that the defendant bears "the burden of proving the existence of a 'fair and just reason'"). When ruling on a motion to withdraw a guilty plea, courts in this circuit should consider the following factors:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Dixon*, 479 F.3d at 436 (quoting *Pluta*, 144 F.3d at 973). The list is "general" and "non-exclusive," and no factor is determinative. *United States v. Ellis*, 470 F.3d 275, 281 (6th Cir. 2006). Instead, the "court must review all the circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987). In weighing these factors, the court should be mindful "that the aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (quoting *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984)).

In this case, the application of the factors listed above demonstrates that the district court did not abuse its discretion in denying Mendoza's motion. The first two factors are the length of the

time that elapsed between the guilty plea and the motion to withdraw, and the defendant's reasons for failing to move to withdraw the plea earlier. Mendoza filed notice of his intent to file the motion sixty-two days after entering the plea, and filed the actual motion a month later. In some cases, this delay might weigh heavily against the defendant. *See, e.g.*, *United States v. Durham*, 178 F.3d 796, 798–99 (6th Cir. 1999) ("The strongest factor supporting the district court's denial of Durham's motion is the [77-day delay] between Durham's plea and the filing of his motion to withdraw."). Mendoza, however, justifies the delay by explaining that he waited for two months with the expectation that the government would meet with him to arrange a new "off-the-record" plea agreement before he finally realized that would not happen. Thus, were Mendoza's story credible, his delay in moving to withdraw the plea would not weigh heavily against him.

The other factors, however, weigh strongly against Mendoza. As the district court found, he has not consistently asserted his innocence. During the evidentiary hearing, he refused to state whether the factual basis of the plea agreement was true because did not wish to incriminate himself.

Turning to the fourth factor, the circumstances underlying the entry of Mendoza's guilty plea indicate that it was a tactical decision, not the product of an "unsure heart and confused mind." *See Alexander*, 948 F.2d at 1004. Serrat testified that Mendoza knew he could avoid conviction only if the government failed to identify his voice on the wiretaps. Mendoza realized he was unlikely to prevail at trial when Borquez-Willis agreed to testify as a government witness, because she was one of the few people who could identify him. Mendoza faced a possible life sentence. By entering a guilty plea, he secured a likely twenty-year sentence, with the possibility of a further reduction for cooperation. Thus, although the plea may have been "hastily entered," *ibid.*, albeit after lengthy

pretrial preparation, Mendoza knew what he was up against in going to trial, and entering the plea was quite sensible. The district court reviewed the terms of the agreement with Mendoza during the plea colloquy. As to Mendoza's contention that he was misled by his attorney and the prosecutor, the district court did not rely on clearly erroneous findings of fact in crediting the testimony of Serrat and the prosecuting attorney that Mendoza was never told that his plea agreement was "fake."

The fifth and sixth factors—Mendoza's background and prior experience with the criminal justice system—also support the district court's decision. Mendoza had pled guilty to federal and state charges before. Attorney Serrat testified that Mendoza "knew the case inside and out," "is very experienced in federal law and Sentencing Guidelines," and knew what penalties he would face were he convicted. The district court did not err in concluding, based on Serrat's testimony, that Mendoza "actively participated" in defense strategy.

Finally, turning to the seventh factor, the district court properly noted that the government might suffer prejudice were Mendoza allowed to withdraw his plea. On November 19, 2008—shortly after Mendoza entered the plea—the court sentenced Borquez-Willis. Her sentencing had been delayed at the government's request because she agreed to testify against Mendoza. The district court did not clearly err in finding that the government would be prejudiced by the possibility that Borquez-Willis would be less willing to cooperate in a future trial.

In summary, the district court did not abuse its discretion in denying Mendoza's motion to withdraw his guilty plea.

III

The district court's denial of Mendoza's motion to withdraw his guilty plea is AFFIRMED.