**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0577n.06

**Case No. 19-3084**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Nov 20, 2019

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| ZUBALI IKANGUA BELL, | ) | |
| | ) | |
| *Defendant-Appellant*. | ) | O P I N I O N |

BEFORE:    COLE, Chief Judge; SILER and MURPHY, Circuit Judges.

COLE, Chief Judge.   Zubali Ikangua Bell pleaded guilty to one count of bank robbery. Before sentencing, Bell moved to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(2).  The district court denied Bell's request and sentenced him to 63 months of imprisonment.   Bell now appeals, arguing: 1) he received ineffective assistance of counsel in regard to his motion to withdraw his plea, and 2) the district court abused its discretion in denying his motion to withdraw his plea.  We affirm.

**I.  BACKGROUND**

On February 28, 2018, Zubali Ikangua Bell was indicted on one count of bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2.  On August 13, 2018, he pleaded guilty to the indictment. At the August 13 plea hearing, the district court engaged in an extensive plea colloquy, ascertaining that Bell had finished high school and gone to "some college"; that Bell was drug and alcohol-free

on the day of the plea; that Bell understood what had happened in his case thus far; that Bell was satisfied with his attorney's representation; that Bell comprehended the rights he was waiving by pleading guilty; and that Bell's plea was not the result of threats, promises, or force. The district court asked the prosecutor to describe the factual basis for the plea, at which time the prosecutor explained:

> On or about December 6 of 2017 in the Northern District of Ohio, the defendant, Mr. Zubali Ikangua Bell, and his co-defendant, Mr. Qaid T. Azeem, robbed a Dollar Bank branch in Richmond Heights, Ohio, of approximately $1,935. Specifically, Mr. Azeem entered the bank and stole the money, and Mr. Bell acted as the getaway driver.

(Plea Hr'g Tr., R. 57, PageID 246–47.) The district court asked Bell, "[D]o you understand that if this matter were to proceed to trial the government would set forth those facts, and do you agree that those facts support the elements of the charge against you beyond a reasonable doubt?" (*Id.* at PageID 247.) Bell responded, "Yes." (*Id.*) The district court then accepted Bell's guilty plea, finding that his plea was made "knowingly, voluntarily, and intelligently," "with a full understanding of his Constitutional rights," and that "a substantial factual basis . . . support[ed] the elements of the charge against him beyond a reasonable doubt." (*Id.* at PageID 248–49.)

Several months later, on November 21, 2018, Bell's counsel filed a motion to withdraw his guilty plea. The motion explained:

> Shortly after an interview with the probation officer for preparation of the pre-sentence report, Mr. Bell indicated to counsel that he would not sign a letter accepting responsibility. Since that time, he has advised counsel that he wishes to file a motion to withdraw his plea[] and proceed to trial. Mr. Bell has not apprised counsel of the precise reasons for seeking withdrawal, other than a claim of innocence.

(Mot. to Withdraw Plea, R. 34, PageID 176.)

The district court conducted a hearing on December 4, 2018, regarding Bell's motion to withdraw his plea. The court began by asking defense counsel to describe the current status, at which time defense counsel explained that Bell wished to withdraw his plea because he believed he was innocent. Counsel explained that the court "can inquire further of [Bell], and he will be more than happy to expound upon that." (Dec. 4 Hr'g Tr., R. 59, PageID 278.) The court then asked Bell to stand and address the court. Bell explained that he had previously pleaded guilty because he was "scared," but he now wanted to withdraw his plea because he "fe[lt] that [he was] innocent," and thus he did not want to "cop out." (*Id.*) Bell indicated that his counsel had not forced him to enter a plea, but instead the plea had resulted from Bell voluntarily taking his counsel's advice.

The district court pressed Bell on why he had waited so long—more than three months after his plea—to bring this to the court's attention. The court asked, "Why didn't you bring it to [defense counsel's] attention or . . . write me a letter saying that, 'Judge, I—a week later, I felt I was under pressure. I'm innocent. I want to withdraw my plea.'? Not three, three and a half months later." (*Id.* at PageID 279.) Bell did not provide any explanation for the delay.

The district court then proceeded to analyze the factors under *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), that we have advised courts to consider when deciding whether to grant a defendant's pre-sentencing motion to withdraw an accepted guilty plea. In particular, the court explained:

> First, the amount of time that elapses between the plea and the motion to withdraw. And we have over three months, which is an extensive period of time.
>
> Second, the presence or absence of a valid reason for failure to move for the withdrawal earlier in the proceedings. The Defendant has not given me any.

> Whether the Defendant has asserted or maintained his innocence. He never asserted it in the beginning. We just hear[d] about it now recently.

> The circumstances underlying the entrance of a guilty plea. Well, that's for the record. We have all those circumstances.

> Again, as [the prosecution] correctly stated, he agreed to the factual basis. Nobody forced him to enter his plea at that time. I was careful in going over the Rule 11 proceedings.

> The Defendant's nature and background. We can put that in—with the degree to which he has prior experience with the criminal justice system, and he does have a history of similar acts as noted in the presentence investigation report. Aggravated robberies, felonious assault. He's been arrested many times. Carrying concealed weapon, drug trafficking. So he's familiar with the justice system. . . .

> Potential prejudice to the Government if the motion to withdraw is granted. Well, obviously, this matter's been set for sentencing, and three and a half months later, there's prejudice.

(Dec. 4 Hr'g Tr., R. 59, PageID 281–83.) Bell tried to interrupt the court as it went through these factors, but the court told him not to interrupt and proceeded in its analysis. The district court then denied Bell's motion to withdraw his plea.

On January 14, 2019, the district court conducted a sentencing hearing. At this hearing, the court asked Bell how he got "involved in" the situation that resulted in his conviction. (Sentencing Hr'g Tr., R. 58, Page ID 267–68.) Bell explained:

> I was driving, and I picked up my friend. . . . I picked him up, and I didn't know what happened. He said he went to the food court, like I say. He said he went to the food court, and it's right by Planet Fitness over there. And when he came back I was driving, I picked him back up, and a few minutes later we got stopped.

(*Id.* at PageID 268.) The court asked if Bell thought "anything was wrong with [his] friend in the car," and Bell responded, "Um, I really—I kind of—it happened so fast that day. I'm not going to lie to you, it happened so fast. And it's a year ago, and like going through so much stress, you

know." (*Id.* at PageID 269.) At the end of the hearing, the district court sentenced Bell to 63 months in prison and 3 years of supervised release. Bell filed a timely notice of appeal.

## II. ANALYSIS

Bell raises two claims on appeal. First, he asserts that he received ineffective assistance of counsel, and second, he argues that the district court abused its discretion in denying his motion to withdraw his plea. As described below, neither argument provides a meritorious basis upon which to afford Bell relief on direct appeal. The record is insufficient to allow us to review his ineffective-assistance-of-counsel claim, and we conclude that the district court did not abuse its discretion in denying Bell's motion to withdraw.

### A.      Bell's Ineffective-Assistance-of-Counsel Claim

Bell claims that his "defense counsel rendered ineffective assistance by failing to provide the district court with any facts in support of [his] motion to withdraw his guilty plea," despite "presumably kn[owing] enough of [his] side of the story" and having a "duty to bring [his] plausible argument before the court for its determination." (Bell Br. 16.) In particular, Bell avers that his counsel should have explained to the court his version of events, in which he was actually innocent and was merely an unwitting driver for a friend who had committed the bank robbery alone. This explanation was only later presented by Bell at the sentencing hearing—after the district court had already denied the motion to withdraw his plea.

"We do not address on direct appeal claims of ineffective assistance unless the record has been sufficiently developed to provide meaningful factual review." *United States v. Brown*, 276 F.3d 211, 217 (6th Cir. 2002); *accord United States v. Buchanan*, 933 F.3d 501, 513 (6th Cir. 2019). Where the record on direct appeal is inadequate, we "defer review of these claims to a post-conviction proceeding where the record may be fully developed." *Brown*, 276 F.3d at 218; *see also United States v. Graham*, 484 F.3d 413, 422 (6th Cir. 2007).

Bell faults his counsel for failing to present further information in support of his motion to withdraw his plea. Yet the record provides no explanation for why defense counsel did not present further facts or argument in support of this motion. Without a sufficient record to assess defense counsel's actions, we decline to review this claim on direct appeal. *See United States v. Meeker*, 411 F.3d 736, 749 (6th Cir. 2005) (declining to reach an ineffective-assistance-of-counsel claim on direct appeal because, "[a]bsent an evidentiary hearing, we cannot determine whether [defense] counsel had a strategic justification for his actions"). We express no opinion regarding the merits of any ineffective-assistance-of-counsel claim that Bell may bring in a future collateral proceeding.

**B.      The District Court's Denial of Bell's Motion to Withdraw His Guilty Plea**

Under Federal Rule of Criminal Procedure 11(d)(2)(B), "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes [the] sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." We have described seven non-exhaustive factors for district courts to consider in determining whether to grant a plea withdrawal request:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998) (quoting *Bashara*, 27 F.3d at 1181); *see also United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). "[T]he government is not required to establish prejudice" under the seventh factor "unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal" under the first six. *United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987). Where a district court denies a motion to withdraw a

guilty plea after it has accepted the plea but before it has sentenced the defendant, we review for abuse of discretion. *See United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007); *United States v. Mendez-Santana*, 645 F.3d 822, 826 (6th Cir. 2011).

Bell does not contest that the district court considered each of these factors. Instead, he argues that "the court did not afford [him] any meaningful opportunity to expound upon his claim of actual innocence" under the third factor before making its decision. (Bell Br. 26.) Bell asserts that because the district court did not inquire as to the basis for his assertion of actual innocence, the district court "abused its discretion by denying [his] motion without adequate information upon which to base its denial." (*Id.* at 28.)

Bell's argument is foreclosed by both the factual record and our caselaw. First, the record reflects that the district court gave Bell ample opportunity to explain the basis for his motion to withdraw his plea. After a short statement by defense counsel, the district court asked Bell to stand and explain the basis for his motion. The court asked Bell why he was only now asserting his innocence, three and a half months after his plea. The court also inquired to ensure that Bell was *not* now arguing that anyone had previously forced him to plead guilty. Bell responded that he had previously pleaded guilty based on his counsel's advice but had now come to regret that decision because he "fe[lt] that [he was] innocent." (Dec. 4 Hr'g Tr., R. 59, PageID 278–79.)

In *United States v. Baez*, 87 F.3d 805 (6th Cir. 1996), we held that a district court "gave [a defendant] an adequate opportunity to argue in support of his motion" to withdraw his plea where the court did not conduct a "formal hearing . . . on the motion," but did give the defendant "the opportunity to explain his motives for seeking to withdraw his plea." *Id.* at 807, 809. The district court here gave Bell more opportunity to explain the basis of his motion than occurred in *Baez*, as the court here conducted a hearing dedicated to the motion and asked Bell several questions to

discern whether his motion had merit. Further inquiry by the district court was not required. *See id.* at 809.

Second, Bell's argument misunderstands the third factor. This factor looks to whether the defendant "has consistently and vigorously maintained his innocence," not whether the defendant's explanation for his innocence is sufficiently convincing. *Dixon*, 479 F.3d at 437; *see also Baez*, 87 F.3d at 809. The district court accurately assessed that Bell did not assert his innocence from the beginning, instead only asserting his innocence months later during the preparation of a presentence report. Bell's behavior does not embody the "consistent[]" protestations of innocence that would support allowing withdrawal of a plea under the third factor. *Dixon*, 479 F.3d at 437.

The district court similarly did not abuse its discretion in its consideration of the other factors. Under the first factor, Bell's November 21 motion to withdraw his plea came 100 days after his August 13 guilty plea. We have upheld denial of motions to withdraw based on shorter delays than this one. *See United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (affirming a denial of a motion to withdraw where there was a "lengthy 55-day delay in filing the motion"); *Baez*, 87 F.3d at 808 (recognizing a 67-day delay as "extensive" and justifying denial of a motion to withdraw). Bell did not provide a reason for delay under the second factor, despite the district court's specific inquiry. Considering the fourth factor, the circumstances of Bell's guilty plea, it is apparent that the district court conducted a lengthy plea colloquy at the August 13 plea hearing; and at the December 4 hearing on the motion to withdraw, Bell did not give any indication that he had previously been forced to enter a plea. *See Dixon*, 479 F.3d at 437 (affirming denial of a motion to withdraw where "there [was] little in the record to indicate that [the defendant's] guilty plea was suspect").

The district court mentioned the fifth factor—Bell's nature and background—but did not conduct an analysis of it before proceeding to the sixth factor regarding Bell's prior contact with the criminal justice system.  Yet the fifth factor also supports denial of Bell's motion.  *See Baez*, 87 F.3d at 808 (affirming a district court's denial of a motion to withdraw where the court "did not specifically address each of the factors," but "it [was] clear that the factors support . . . denial of the motion").  Under the fifth factor, courts often look to a defendant's education and health.  *See, e.g.*, *United States v. Goddard*, 638 F.3d 490, 495 (6th Cir. 2011).  Here, Bell had gone to some college, suggesting that he had sufficient education to understand the consequences of his guilty plea.  *See id.*  There is, furthermore, no indication in the record that he had any mental or physical health conditions that would have supported allowing his motion to withdraw.  *Cf. Dixon*, 479 F.3d at 437 (concluding the "fifth factor arguably weighs in [the defendant's] favor" where he had "hearing difficulties" and "a history of heart ailments").

In considering the sixth factor, the district court correctly noted that Bell's criminal history supported denial of his motion to withdraw.  Bell's prior convictions for aggravated robbery and felonious assault indicate that he had "sufficient [prior] contact with the criminal justice system to fully understand his rights and the process."  *Goddard*, 638 F.3d at 495.  Given that all six factors support denial of Bell's motion to withdraw, the government was not required to establish prejudice under the seventh factor.  *See Spencer*, 836 F.2d at 240.  We thus hold that the district court did not abuse its discretion in denying Bell's motion to withdraw his guilty plea.

### III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.