NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0623n.06

No. 13-6299

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 02, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

FRANKIE D. CRUM,

    Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

BEFORE:    COLE, Chief Judge; MOORE, and CLAY, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Frankie D. Crum appeals from the judgment entered by the district court on December 12, 2012, sentencing Crum to two concurrent 100-month terms of imprisonment for conspiring to distribute oxycodone and marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C).

On appeal, Crum challenges the factual basis of his guilty plea for the marijuana offense and raises an ineffective assistance of trial counsel claim. For the following reasons, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.  Procedural History

Crum was charged with three drug offenses: (1) conspiring to distribute and possess with intent to distribute at least five kilograms of cocaine in violation of 21 U.S.C. §§ 846 and

841(a)(1), (b)(1)(A); (2) conspiring to distribute and possess with intent to distribute at least one thousand kilograms of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A); and (3) conspiring to distribute and possess with intent to distribute oxycodone, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C).

On March 8, 2012, Crum pleaded guilty to the oxycodone conspiracy count and a lesser included cocaine conspiracy offense. The district court rejected this plea agreement, finding that the facts to which Crum stipulated were insufficient to support the cocaine charge. On April 11, 2012, Crum entered an amended guilty plea to the oxycodone conspiracy charge and to a lesser included marijuana conspiracy offense—conspiracy to distribute and possess with intent to distribute at least fifty kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C). The district court accepted this amended plea agreement and, on December 12, 2012, sentenced Crum to 100 months of imprisonment for each count to run concurrently.

On September 27, 2013, Crum sent a *pro se* letter to the district court to inquire about the status of his direct appeal. However, no direct appeal had been filed by Crum's attorney. The court construed Crum's September 27, 2013 letter as a notice of appeal and transferred the notice to this Court. We accepted the notice on December 17, 2013, reasoning that, although the notice was untimely, adjudication of Crum's direct appeal would be more efficient than adjudication of the same issues through a 28 U.S.C. § 2255 motion.

At the time that we decided to accept Crum's untimely notice of appeal, Crum had already filed a § 2255 motion asserting ineffective assistance of trial counsel. The district court ultimately dismissed his § 2255 motion without prejudice on the grounds that "a defendant who has a direct appeal pending may not maintain a 28 U.S.C. § 2255 action, absent extraordinary circumstances." (R. 387, Memorandum, Page ID # 2556.) The district court denied issuance of a

certificate of appealability. On March 15, 2014, Crum filed a *pro se* notice of appeal as to the district court's dismissal of his § 2255 motion along with a request to consolidate his direct appeal with his § 2255 motion. We construed Crum's filing as an application for a certificate of appealability, which we denied on July 18, 2014. Accordingly, Crum's direct appeal is the only matter currently before us.

**B. Factual History**

In his amended plea agreement, Crum stipulated to the following facts. From sometime in August 2005 to June 29, 2011, Crum assisted his cousin and other individuals in the distribution of cocaine, oxycodone, and marijuana.[1] This assistance included Crum's participation in organized trips to various pain clinics in Florida and Georgia to obtain "mass quantities" of oxycodone pills, which Crum and others then transported back to Tennessee. (R. 200, Amended Plea Agreement, Page ID # 1248.) Crum's plea agreement included detailed information about these trips and his assistance in the distribution of Oxycodone. On appeal, Crum does not challenge the validity of his guilty plea to the Oxycodone offense. He challenges only the validity of his guilty plea to the marijuana conspiracy charge.

With respect to his participation in the marijuana distribution conspiracy, Crum stipulated to the following facts:

1) "On January 8, 2010, in a Title III intercepted conversation, [Crum's cousin] ordered a twenty bag of marijuana from [Crum]. [Crum] told [his cousin] that he did not have a scale. [Crum's cousin] authorized [Crum] to eyeball it, but [Crum] said that it was impossible to just eyeball it because it was too compressed." (*Id*. at 1250.)

2) "On January 26, 2010 in a Title III intercepted conversation, [Crum's cousin] told [Crum] that he just sold two ounces of marijuana to a customer and almost got busted by the police." (*Id.* at 1252.)

---

[1] Frankie D. Crum's cousin and co-conspirator is named Frankie L. Crum. In the interest of clarity and to avoid confusion, we refer to Frankie L. Crum as "Crum's cousin."

3) "On or about February 3, 2010, in a Title III intercepted conversation[], [Crum] volunteered to help [his cousin] by  driving to Memphis, Tennessee and bringing back a large quantity of marijuana to the Greeneville area. [Crum] said that his car was in the shop, so [Crum's cousin] said he could get a rental vehicle for him. [Crum] asked who would be going to Memphis and [his cousin] told him it would only be him, if he agreed to be the driver, and co-defendant Marco Antonio Rojas. [Crum's cousin] told [Crum] that Rojas would be driving in a separate vehicle. [Crum] asked how much marijuana he would be picking up in Memphis and bringing back to Greeneville. [Crum's cousin] told [Crum] it could [be] at least 200 pounds, depending upon how much they could fit in the trunk. [Crum] told [his cousin] they needed to talk in person because [Crum] did not trust talking about these matters over the phone and [his cousin] agreed. Later that day, in another Title III intercepted conversation, [Crum] told [his cousin] that he wanted to go to Memphis at night and drive back to Greeneville with the marijuana in the day time. [Crum's cousin] told [Crum] that he would be talking to Rojas again soon and would call [Crum] again after that with more details. The evidence shows that co-defendant Tracy Haney rented a car for [Crum's cousin] and Billy Gene Taylor ended up driving it to Memphis, in lieu of [Crum]. On February 6, 2010, during the return trip to Greeneville, the rental vehicle driven by Taylor was pulled over. During a resulting consensual search of the vehicle, agents found seven bundles of marijuana weighing approximately 144 pounds in the trunk." (*Id.* at 1253.)

On the basis of these stipulated facts and Crum's responses during his plea colloquy, the district court found that the plea was knowing and voluntary and based on a sufficient factual basis.

## II.  DISCUSSION

### A.  Jurisdiction

As a threshold consideration, we note that the only matter properly before us at this time is Crum's direct appeal from the district court's judgment.  Crum spends a substantial portion of his appellate briefing arguing that the Court should also consider claims pertaining to the district court's dismissal of his § 2255 motion.  However, we already denied Crum's request for a certificate of appealability in that matter in an order filed on July 18, 2014.  "Unless a circuit

justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). The Supreme Court has recognized that the language of § 2253(c) is jurisdictional, and that absent a certificate of appealability, "federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." *Gonzalez v. Thaler*, 132 S. Ct. 641, 649 (2012) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)) (internal quotation marks omitted). Consequently, we may consider only Crum's direct appeal from the district court's judgment.

In his appellate briefing, Crum raises the possibility that we may lack jurisdiction to consider his direct appeal because his notice of appeal was untimely. *Appellant's Br.* at 12. Rule 4(b)(1)(A) of the Federal Rules of Appellate Procedure provides that:

> In a criminal case, a defendant's notice of appeal must be filed in the district
> court within 14 days after the later of:
> (i) the entry of the judgment or order being appealed; or
> (ii) the filing of the government's notice of appeal.

Crum contends that "the time limits of Rule 4(b) are an inflexible claim-processing rule which a court of appeals is bound to enforce when the United States raises the issue." *Appellant's Br.* at 12. Indeed, we have previously held that "[w]e are required to dismiss late-filed criminal appeals when the government has raised the issue." *United States v. Dominguez*, 513 F. App'x 458, 463 (6th Cir. 2013). However, Rule 4(b) is not jurisdictional, and we are not required to dismiss late-filed criminal appeals where, as here, the government has *not* raised the issue. *See United States v. Gaytan-Garza*, 652 F.3d 680, 681 (6th Cir. 2011) (per curiam).

We previously determined that Crum's appeal should not be dismissed as untimely. Since the government has not argued otherwise, we have jurisdiction to consider Crum's appeal despite Crum's suggestions to the contrary.

## B. Validity of Crum's Guilty Plea

Crum's primary argument on appeal is that the district court erred in accepting Crum's guilty plea to a marijuana conspiracy, because the plea lacked a factual basis as required by Rule 11(b)(3) of the Federal Rules of Criminal Procedure.

### 1. Standard of Review

Where, as here, a defendant fails to raise an objection in the district court, this Court reviews a district court's determination that a guilty plea has a sufficient factual basis for plain error. *United States v. McCreary-Redd*, 475 F.3d 718, 721 (6th Cir. 2007). To establish plain error, a defendant must demonstrate:

> (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings.

*United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998). Moreover, to secure relief for an unpreserved Rule 11 violation, a defendant must demonstrate "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Mobley*, 618 F.3d 539, 544 (6th Cir. 2010) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004)).

### 2. Analysis

Pursuant to Rule 11(b)(3) of the Federal Rules of Criminal Procedure, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." This rule is designed to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *McCarthy v. United States*, 394 U.S. 459, 467 (1969). The rule itself "does not provide any guidance concerning the steps a district court should take to ensure that a factual basis exists." *McCreary-Redd*, 475 F.3d at 722. However, we have previously

6

explained that "[t]he ideal means to establish the factual basis for a guilty plea is for the district court to ask the defendant to state, in the defendant's own words, what the defendant did that he believes constitutes the crime to which he is pleading guilty." *Mobley*, 618 F.3d at 545 (quoting *United States v. Tunning*, 69 F.3d 107, 112 (6th Cir. 1995)). Nonetheless:

> This ideal method is by no means the only method . . . . [T]he district court may determine the existence of the . . . factual basis from a number of sources, including a statement on the record from the government prosecutors as well as a statement from the defendant. And, of course, it is possible that witnesses may be called to state the factual basis with the defendant providing confirmation.

*Id.* (internal quotation marks omitted).

In this case, the district court acknowledged that it needed to "determine that there is an adequate basis for the guilty plea[]" prior to accepting Crum's plea. (R. 383, Second Plea Transcript, Page ID # 2488.) The court then proceeded to ascertain that Crum understood the elements of the crime, and had read and agreed with the statement of stipulated facts. Crum's argument centers on the content of the stipulated facts. He contends that, even accepted as true, the stipulated facts fail to support the "agreement" element of criminal conspiracy.[2]

The elements of a conspiracy to distribute marijuana under 21 U.S.C. §§ 846 and 841 are: (1) an agreement to violate the drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy. *United States v. Gunter,* 551 F.3d 472, 482 (6th Cir. 2009). An agreement to enter a conspiracy need not be explicit. Rather, "a tacit agreement or mutual understanding" is sufficient. *United States v. Paige*, 470 F.3d 603, 609 (6th Cir. 2006).

---

[2] For the first time in his reply brief, Crum argues that the factual stipulations also fail to support the "participation" element of conspiracy. *Reply Br.* at 4. However, he waived this argument by failing to raise it in his initial brief. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held . . . that arguments made to us for the first time in a reply brief are waived."). Crum's initial brief solely argues that the stipulated facts do not support the "agreement" element of conspiracy.

The district court did not commit plain error in finding that Crum's stipulated facts were sufficiently indicative of an agreement to violate drug laws to support his marijuana conspiracy conviction. The statement of stipulated facts includes a summary of a Title III intercepted conversation in which Crum volunteered to help his cousin drive to Memphis in order to transport "a large quantity of marijuana to the Greeneville area." (R. 200, Amended Plea Agreement, Page ID # 1253.) Upon learning that Crum did not have access to a car, Crum's cousin offered to rent a vehicle for Crum to use. Crum proceeded to discuss logistics with his cousin and then suggested that they meet to talk in person because he did not "trust talking about these matters over the phone." (*Id.*) In a subsequent conversation that day, Crum told his cousin that "he wanted to go to Memphis at night and drive back to Greeneville with the marijuana in the day time." (*Id.*) Crum's cousin then told Crum that he would be speaking with another individual about the plan soon, and would call Crum after that conversation to provide him with more details.

Pointing to the fact that he did not ultimately drive the car for his cousin, Crum contends that these factual stipulations merely indicate that he volunteered to participate in the unlawful activity, but provide no basis for the conclusion that his cousin ever "tacitly or expressly agreed to accept [Crum's] offer." *Appellant's Br.* at 15. To the contrary, the extended logistical conversation between Crum and his cousin, including his cousin's offer to rent a car for Crum to use, is suggestive of an agreement to violate the drug laws. Furthermore, the latter conversation between Crum and his cousin, in which his cousin stated that he would call Crum to give him more details, implies that his cousin had accepted Crum's offer. Although the stipulated facts do not include a "formal agreement" between Crum and his cousin, the intercepted phone calls can "reasonably be interpreted" as establishing their agreement to join a common plan. *Paige*, 470

F.3d at 608. It is therefore neither "obvious" nor "clear" that the district court erred in determining that the stipulated facts accepted by Crum provided a sufficient factual basis to support the agreement element of conspiracy. *Koeberlein*, 161 F.3d at 949.

### C. Ineffective Assistance of Trial Counsel

Crum argues that his trial counsel was ineffective by failing to file an appeal from the district court's judgment despite being asked by Crum to do so. However, Crum does not appear to be raising this argument as part of his direct appeal, but rather as a claim related to his § 2255 motion. As was previously discussed, we lack jurisdiction to review Crum's § 2255 motion and cannot consider his ineffective assistance of counsel claim to the extent that he is raising it as part of his § 2255 motion.

Even assuming that Crum intended to raise his ineffective assistance of counsel claim as part of his direct appeal, we are ill-equipped to consider his claim. "As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. McAllister*, 693 F.3d 572, 586 (6th Cir. 2012) (quoting *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005)). Resolving ineffective assistance of counsel claims typically requires a factual inquiry that appellate courts are not well equipped to undertake. *United States v. Brown*, 332 F.3d 363, 368-69 (6th Cir. 2003). We have therefore "routinely concluded that such claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255." *Martinez*, 430 F.3d at 338. Such is the case with this appeal.

Crum's argument turns on findings of fact that we would be unable to make at this juncture. Beyond the bare assertion that he asked his trial counsel to file an appeal that was

never filed, Crum does not point to any facts in the record that support his claim. Accordingly, we decline to address the merits of Crum's ineffective assistance of counsel claim at this time.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.