**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 16a0301n.06**

**No. 15-1835**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jun 07, 2016
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE WESTERN |
| MOHAMAD ALI DALALLI, | ) DISTRICT OF MICHIGAN |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

**BEFORE: COLE, Chief Judge; CLAY and GIBBONS, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** At the end of the first day of his jury trial, Mohamad Ali Dalalli pled guilty to all five counts of his pending indictment, though he had no plea bargain with the government. Several months later, but well before sentencing, Dalalli's court-appointed attorney sought to withdraw. The district court denied the request. After another several months passed, Dalalli moved to withdraw his guilty plea. The district court also denied this request. The district court then sentenced Dalalli to 27 months' imprisonment and revoked his naturalized citizenship. On appeal, Dalalli asserts error in the district court's denial of the motions to withdraw as counsel and to withdraw his guilty plea, its finding of a sufficient factual basis for his guilty plea, and in the reasonableness of his sentence. For the reasons set forth in this opinion, we affirm the district court's judgment in all respects.

## I.

In a series of indictments beginning on November 7, 2013, Dalalli and his wife Rima Alame were alleged to have defrauded the United States by receiving a variety of welfare benefits under false pretenses. In the Third Superseding Indictment, filed on October 8, 2014, Count 1 alleged that Dalalli and Alame engaged in a conspiracy to obtain benefits to which they were not entitled by making false representations that they had low income and negligible assets. Counts 2, 3, and 4 alleged theft of public money from the United States Department of Agriculture, the United States Department of Health and Human Services ("HHS"), and the United States Department of Housing and Urban Development ("HUD") in excess of $1000 in violation of 18 U.S.C. §§ 641 and 2. Count 5 alleged that Dalalli had become a naturalized citizen through fraud in violation of 18 U.S.C. § 1425(b).

Shortly after the first indictment was filed, the court granted Dalalli's request for counsel and appointed Gary Springstead pursuant to the Criminal Justice Act. After several continuances based on Dalalli's need for a translator, voluminous records, and the several superseding indictments, Dalalli's case proceeded to trial on January 13, 2015.[1]

## A.

The morning of trial, the court was informed that Dalalli wished to plead guilty to all of the charges pending against him, though there was no plea deal offer from the government. The district court expressed concern about accepting a guilty plea the morning of trial, given that there was no agreement with the government and that the jury venire had already assembled. Springstead informed the court that Dalalli wished to plead guilty to help his wife with her case, even though there were no guarantees. The court again expressed concern because Dalalli's

---

[1] The district court denied Dalalli's final motion for a continuance, which was filed less than a week before trial was set to begin.

hope that a guilty plea would help his wife was part of no deal, and it decided to proceed with the first morning of trial to give Dalalli additional time to consider his options. If Dalalli still wished to plead guilty after jury selection and the beginning of trial, according to the court, then it would consider the matter at that time.

That afternoon, Dalalli again indicated that he wanted to plead guilty to all five counts in the Third Superseding Indictment. The court did its best to confirm that Dalalli wished to plead guilty, stating, for example: "In other words, if we go forward with a trial and you lose everything at trial, you're going to wind up convicted of all five charges that you want to plead guilty to today? Do you understand that?" DE 181, Guilty Plea Tr., Page ID 1033. The court further explained that "even if you plead guilty today, that doesn't guarantee anything for your wife." *Id.* After Dalalli was sworn, the district court conducted a thorough guilty plea colloquy, beginning with ensuring that Dalalli could understand the court through his translator.

The court repeatedly probed why Dalalli was choosing to plead guilty, given that he had no plea agreement. At one point, the court classified Dalalli's decision to plead guilty as "the worst possible thing that could happen to you at the end of trial." *Id.* at 1037. When questioned, Dalalli explained that he hoped his guilty plea would result in lenient treatment for his wife. In response, the court emphasized several times that Dalalli's decision to plead guilty "has nothing to do with what happens to [his] wife," and that "that government could come back at another date and try the very same case against her that they started to try against [Dalalli]." *Id.* at 1038. When Dalalli stated that "[t]he same way I help the government by admitting the guilt, the same they are going to help my wife," the court confirmed that this was his "own hope, . . . own judgment, . . . own guess," and called it "a gamble basically." *Id.* at 1039. In addition, Dalalli

admitted that his decision was not based on anything told to him by the government or Springstead.

Before accepting Dalalli's guilty plea, the court explained the elements of each charge that the government would have to prove at trial beyond a reasonable doubt, as well as the maximum possible period of imprisonment, fine, and period of supervised release for each count. To be guilty of a violation of 18 U.S.C. § 641, as charged in Counts 2–4, according to the court, the government would have to, first, prove that Dalalli improperly took money from the agencies as charged in the Third Superseding Indictment. Second, the government would "have to show that you got it fraudulently, that is you weren't supposed to get it, you didn't qualify for it, but you got it anyway." DE 181, Guilty Plea Tr., Page ID 1046. The third element required the government to prove that Dalalli improperly took the government's money, not by accident or mistake, but by deliberate fraud. The court further explained that Count 5 required the mandatory revocation of Dalalli's citizenship, which might subject him to deportation.

The court warned Dalalli that he could face up to ten years' imprisonment for four counts and up to five years' imprisonment for the remaining count, making the worst case scenario forty-five years' imprisonment. The court explained that prior to sentencing, Dalalli would be interviewed by a probation officer, who would aid the court in calculating his Guidelines range. Only then did the court accept Dalalli's guilty plea to each count charged in the Third Superseding Indictment.

As a factual basis, Dalalli admitted that he had $30,000 in a bank account in Lebanon as early as 2006, when he applied for various benefits. The court asked Dalalli whether it was his money, and Dalalli agreed that it was. The court asked Dalalli whether he "understood if [he] told the government on the forms that [he] had $30,000 in the bank, [he] realized [the

government] w[as]n't going to give [him] benefits," to which Dalalli responded, "Correct." *Id.* at 1065. Dalalli admitted that Alame knew about the bank account, she possessed undisclosed jewelry, and she knew that Dalalli had bought a grocery store which took in cash receipts. Dalalli also admitted that he had signed a statement to the Immigration Service in June 2013 that he resided at his former family residence, but that he had moved out at some earlier time. Both the government and Springstead indicated that they were satisfied with the factual basis for the plea.

**B.**

As is customary, Dalalli's probation officer prepared a presentence investigation report ("PSR") prior to sentencing, which reported that Dalalli had unlawfully obtained $126,739 in federal welfare benefits by concealing assets. During a March 18, 2015 meeting to prepare the PSR with his probation officer, Springstead, and a translator, Dalalli claimed that he was not guilty of the conduct to which he had pled guilty two months earlier. At this meeting, according to the PSR, "Dalalli alleged his 'lawyer is working for the government'" and "'forced' him 'to plead guilty rather than go to trial.'" DE 153, PSR, Page ID 823. Dalalli apparently continued that "I don't have the freedom to say what I want. I told my attorney they are playing a game and I don't have a choice. My attorney did not represent me the right way. To defend me. I ask if he is working for the government or is he helping me. My words have been misinterpreted." *Id.*

Shortly afterwards, on March 24, 2015, Springstead filed a motion to withdraw as counsel. Springstead asserted that "there was a breakdown in the attorney-client relationship" during the March 18, 2015 meeting, based on Dalalli's allegations that "the government forced him to plead guilty, [Springstead] worked for the government (implying [Springstead] had the

government's best interest in mind, not his); he never wanted a jury trial and [Springstead] pursued a jury trial against his wishes; and, that, generally, he was dissatisfied with [Springstead]." DE 129, Mot. Withdraw Counsel, Page ID 641. Dalalli also informed Springstead that he wanted to hire another attorney.

At an April 13, 2015, hearing on this motion, the district court questioned Dalalli about whether and why he wanted a new attorney. Dalalli's first response was, "Can I represent myself, Your Honor?" DE 178, Mot. Withdraw Counsel Tr., Page ID 995. The court responded that it would start with whether Dalalli wanted a new lawyer. The court never revisited the issue of self-representation, nor did Dalalli raise it again until this appeal.

Dalalli thereafter represented that he had already hired a new attorney, although no one appeared to represent him. Dalalli then admitted that he did not know the full name of the attorney and that Dalalli had not spoken with him directly. In response to the court's question about why he wanted a new lawyer, Dalalli discussed his underlying case, saying that "I have so many evidence [*sic*], I have so many proofs, but no one is giving me the chance to talk. No one is giving me the chance to elaborate on these accusations." *Id.* at 997. When the district court attempted to refocus Dalalli on the instant matter, Dalalli stated: "People are putting pressure on me, Your Honor. Yes, plead guilty in order to get your wife out of jail. Say you're guilty because in order to get your children back to you." *Id.* at 1000. Dalalli stated that he was exhausted from Springstead's "interrogation" of him. *Id.* at 1000–01. Springstead would ask, according to Dalalli, "'Tell me about Hezbollah.' 'Tell me about the militant groups.' 'Tell me about ISIS.'" *Id.* at 1001. Dalalli explained that "I didn't feel that [Springstead] was working for me or for my interests." *Id.* Springstead did not add to these allegations but informed the court that "by not elaborating on his allegations . . . I'm not agreeing with them." *Id.* at 1008.

The district court explained that to grant Springstead's motion, there must be good cause. The court noted Dalalli's frustration with Springstead but also pointed out that during his guilty plea colloquy, Dalalli had represented to the court that no one was making him any promises in exchange for his guilty plea. In evaluating whether the motion to withdraw was timely, the court remarked that "Springstead has been working the case as appointed counsel for a very long time without any barriers noted on the record between counsel and client," and additionally, that two months had lapsed since the guilty plea. *Id.* at 1005. The court surmised that Dalalli may have been having second thoughts about his decision to plead guilty, as the first draft of the PSR had been completed shortly before Springstead filed his motion, but stated that such second guessing does not amount to good cause to grant the motion. According to the court, there was not the "kind of barrier between defense counsel and client that warrants changing horses at this stage." *Id.* at 1006. The court also expressed hesitation about allowing Springstead to withdraw, since Dalalli's "retained counsel" had not appeared in court that day. *Id.* at 1006–07. The court ultimately denied the motion to withdraw, concluding that Springstead should continue his representation, which was "now limited to some sentencing matters." *Id.* at 1008.

**C.**

On June 14, 2015, Dalalli, through Springstead, filed a motion to withdraw his guilty plea. Dalalli asserted his actual innocence and explained that he had pled guilty because of pressure and emotional exhaustion and because he believed he might face more lenient sentencing with a guilty plea. The motion continued: "Based on his history as an immigrant from Iraq and, as a person for whom English is a second language, Mr. Dalalli had little experience dealing with and understanding the U.S. criminal justice system." DE 154, Mot. Withdraw Guilty Plea, Page ID 834–35. Dalalli further posited that there would be little

7

prejudice to the government "other than the inconvenience and expense of getting the trial together again," as the government had been fully prepared for trial in January 2015. DE 174, Sentencing Tr., Page ID 943.

Prior to sentencing on July 14, 2015, the district court held a hearing on Dalalli's motion to withdraw his guilty plea, which the government opposed. Relying on the test set forth in *United States v. Dixon*, 479 F.3d 431 (6th Cir. 2007), the court found that the timing of the motion weighed heavily against Dalalli, as the motion came after the PSR and five months after the guilty plea. The court determined that the circumstances of the guilty plea also weighed against Dalalli, as he had pled guilty to all charges pending against him with no plea bargain. Though Dalalli's claim of innocence and his immigrant status with no prior experience with the American justice system weighed in his favor, they were not enough to sway the court's decision. Further, according to the district court, forcing the government to go to trial six months after a jury had originally been impaneled would present "a practical prejudice," both to the government and to the public. DE 174, Sentencing Tr., Page ID 951. Accordingly, the district court denied Dalalli's motion to withdraw his guilty plea.

**D.**

The PSR grouped Counts 1–4 as provided by U.S.S.G. § 3D1.2(d). For these charges, Dalalli's adjusted offense level was 16. Count 5 was grouped separately and was assigned an adjusted offense level of 8 under U.S.S.G. § 2L2.2(a). Pursuant to U.S.S.G. § 3D1.4, Dalalli was assessed an additional offense level based on the multiple count adjustment—raising his total offense level to 17. With a criminal history category of I, Dalalli's Guidelines range was 24 to 30 months' imprisonment. Neither Dalalli nor the government made any legal objections during the sentencing hearing.

Dalalli, however, did move for a downward variance because although the total amount of fraudulent benefits received was significant, Dalalli and his family did not live an extravagant lifestyle: $126,739 spread over nine years amounted to less than $1200 per month. Dalalli further argued that as an Iraqi refugee, when he first applied for the various benefits, he could not speak English and did not know the programs' guidelines. During allocution, Dalalli again asserted his innocence and frustration with the justice system. The government opposed Dalalli's motion for a downward variance.

The court sentenced Dalalli to 27 months' imprisonment—a sentence squarely within the Guidelines range of 24 to 30 months' imprisonment. It revoked Dalalli's naturalized citizenship, as required by 8 U.S.C. § 1451(e). The court took issue with Dalalli's inconsistent position on his guilt, which it interpreted as "an attempt to . . . game the system." DE 174, Sentencing Tr., Page ID 969. Therefore, it declined to award a downward variance or any reduction for acceptance of responsibility but chose not to impose a penalty for obstruction of justice or to vary upward from the Guidelines range. Dalalli objected to the denial of his request for a downward variance and the revocation of his naturalization.

## II.

### A.

Dalalli first argues that the district court erred by failing to order substitution of counsel after learning of reason to believe there had been a breakdown in the attorney-client relationship between Springstead and himself, which he contends violated his Sixth Amendment right to counsel.

"Although an indigent defendant under our case law does not have a right to counsel of choice, the Sixth Amendment requires the substitution of appointed counsel upon a showing of

good cause." *United States v. Marrero*, 651 F.3d 453, 477–78 (6th Cir. 2011) (Clay, J., dissenting) (citing *United States v. Iles*, 906 F.2d 1122, 1130–31 (6th Cir. 1990)). The Sixth Amendment provides a right to counsel at all "critical stages" of criminal proceedings, *United States v. Wade*, 388 U.S. 218, 227–28 (1967), which includes sentencing. *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (citing *Mempa v. Rhay*, 389 U.S. 128 (1967)).

A district court must inquire whether good cause exists for the substitution of counsel if a motion to withdraw is filed prior to sentencing. *United States v. Reynolds*, 534 F. App'x 347, 371 (6th Cir. 2013) (quoting *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009)). We review a district court's refusal to substitute counsel for abuse of discretion. *United States v. Watson*, 620 F. App'x 493, 497 (6th Cir. 2015) (citing *United States v. Henderson*, 626 F.3d 326, 340 (6th Cir. 2010)). "A district court abuses its discretion 'when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.'" *United States v. Lineback*, 330 F.3d 441, 443 (6th Cir. 2003) (quoting *United States v. Spikes*, 158 F.3d 913, 927 (6th Cir. 1998)).

> When reviewing a district court's denial of a motion to withdraw or substitute counsel, we generally must consider: (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001) (citations omitted). We are mindful that "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Vasquez*, 560 F.3d at 466 (quoting *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983)).

Contrary to the district court's finding, the first factor, the timeliness of the motion, weighs mostly in Dalalli's favor. The district court focused on the lengthy period of time in which Springstead and Dalalli were able to "work together constructively," and noted that the motion was filed two months after Dalalli pled guilty. DE 178, Mot. Withdraw Counsel Tr., Page ID 1007. The district court, however, failed to mention that Dalalli's sentencing was still months away: Springstead filed the motion to withdraw as counsel on March 24, 2015; the hearing on the motion occurred on April 13, 2015; and sentencing did not occur until July 14, 2015—three months later. A period of three months would have enabled a new attorney for Dalalli to prepare for the sentencing hearing. *Cf. United States v. Chambers*, 441 F.3d 438, 447 (6th Cir. 2006) (finding motion for new counsel filed "approximately one and a half months prior to the scheduled trial date" was not timely).

We also consider the adequacy of the court's inquiry into the breakdown in communication. *Mack*, 258 F.3d at 556. This court has previously indicated that "to meet this requirement, the district court simply must allow a defendant the opportunity to explain the attorney-client conflict as he perceives it." *Marrero*, 651 F.3d at 465 (majority) (collecting cases). The trial court made a sufficient inquiry into the situation, hearing from both Dalalli and Springstead before concluding that there was not a complete breakdown in communication between them. *See United States v. Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004) ("We conclude that this inquiry was adequate because it allowed all of the interested parties to present their respective evidence and arguments.")

We next ask whether there was the kind of complete breakdown in communication that would necessitate substitution of counsel. Although Springstead seemingly continued to zealously represent Dalalli, including later filing the motion to withdraw his guilty plea and a

motion for downward variance at sentencing, Dalalli's complaints about his lawyer verge on a complete breakdown. For instance, Dalalli was upset that Springstead allegedly questioned him about Hezbollah, terrorism, and ISIS. If true, it is hard to imagine that they had the ideal attorney-client relationship. Importantly, however, the standard is not so strict: so long as there is no conflict "so great that it resulted in a total lack of communication preventing an adequate defense," there is no good cause to grant a motion to withdraw. *Marrero*, 651 F.3d at 466 (citation omitted). Though Dalalli had remarked that Springstead questioned him about various terrorist groups, which, if true, would seriously impair the attorney-client relationship, the district court was justified in discounting Dalalli's characterization of the attorney-client relationship as "thoroughly contradicted by the record." DE 178, Mot. Withdraw Counsel Tr., Page ID 1008. Dalalli's representations at the hearing on Springstead's motion to withdraw were inconsistent with the testimony he gave under oath when he pled guilty. In view of Dalalli's apparent falsehoods, the district court was not required to accept Dalalli's vague assertions that another attorney had been contacted on his behalf in spite of the fact that Dalalli did not know the attorney's name and had apparently never spoken with him.

Even though Dalalli did not explicitly say that he was completely unable to communicate with his attorney, given the language barriers that existed, it is not outside the realm of possibility that Dalalli felt unable to communicate with Springstead. But, given the lack of such testimony from either Dalalli or Springstead, and in consideration of the district court's more-than-adequate inquiry, the district court did not abuse its discretion in declining to find such a breakdown in communication that necessitated the appointment of new counsel.

The fourth factor—the public's interest in the prompt and efficient administration of justice—is somewhat neutral. Weighing in Dalalli's favor, all that remained was sentencing,

which did not take place until three months after the motion to withdraw as counsel was filed, which is more than enough time for a new attorney to familiarize himself or herself with the case. *Cf. Marrero*, 651 F.3d at 467 ("Because the district court decided [the defendant's] first motion for substitute counsel at the same time it permitted him to withdraw his guilty plea, this disposition coincided with a necessary rearrangement of the district court's schedule for [the defendant's] case. It was not as if [the defendant] requested new counsel in the middle of trial, at the expense of great time and effort already put forth by the Government."). As sentencing was months away, the court was not presented with a situation in which "the granting of the defendant's request would almost certainly necessitate a last-minute continuance." *See Vasquez*, 560 F.3d at 467 (citation omitted). In addition, this was the first time that Dalalli sought new counsel; this is not a case in which the defendant repeatedly sought the appointment of new counsel to attempt to delay his proceedings. *See id.* at 468. Weighing against Dalalli, however, is the length of time between his initial indictment and Springstead's appointment in 2013 and his eventual plea and sentencing in 2015.

In balancing these factors, we conclude that the district court did not abuse its discretion in denying Springstead's motion to withdraw as counsel.[2]

**B.**

Dalalli next contends that the district court failed to determine that there was an adequate factual basis for his guilty plea to Counts 2–4, in violation of Federal Rule of Criminal Procedure 11(b). According to Dalalli, all he admitted to was making false representations to the government, but 18 U.S.C. § 641 applies only to larceny and embezzlement. Thus, his argument

---

[2] During the hearing on the motion, Dalalli asked whether he could represent himself, and the district court never directly addressed this issue. However, Dalalli's request for self-representation was not serious, as he did not raise it again before the district court, although he had ample opportunity to do so—if not during the April hearing, then in the months before his sentencing or during his sentencing.

goes, he could have been found guilty of fraud, but not theft of public money. Additionally, he contends that it was not established that "property of the United States was involved," Appellant Br. at 41, despite the government's proffer that the Department of Agriculture, HHS, and HUD provided the funds for the benefits programs at issue. Dalalli further argues that because there is no factual basis for his convictions under § 641, the convictions for Counts 1 and 5 are likewise invalid as they are predicated on the same argument.

Federal Rule of Criminal Procedure 11 provides that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "The purpose of this requirement is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense." *United States v. McCreary-Redd*, 475 F.3d 718, 722 (6th Cir. 2007) (quoting *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995)). Rule 11 provides no guidance for how a district court must or should ensure that a factual basis exists, but this court has explained:

> The ideal means to establish the factual basis for a guilty plea is for the district court to ask the defendant to state, in the defendant's own words, what the defendant did that he believes constitutes the crime to which he is pleading guilty. So long as the district court ensures that the defendant's statement includes conduct—and mental state if necessary—that satisfy every element of the offense, there should be no question concerning the sufficiency of the factual basis for the guilty plea. This "ideal" method is by no means the only method, however. We recognize that the district court may determine the existence of the . . . factual basis from a number of sources, including a statement on the record from the government prosecutors as well as a statement from the defendant.

*United States v. Mobley*, 618 F.3d 539, 545 (6th Cir. 2010) (alteration in original) (internal quotation marks omitted) (quoting *Tunning*, 69 F.3d at 112). "In reviewing whether a district court had a factual basis for a plea, . . . we 'may examine the entire record, including proceedings that occurred *after* the plea colloquy.'" *Id.* (quoting *McCreary-Redd*, 475 F.3d at 722 n.1).

Because Dalalli did not raise this objection in the district court, we review for plain error. *United States v. Crum*, 625 F. App'x 304, 308 (6th Cir. 2015) (citing *McCreary-Redd*, 475 F.3d at 721). To establish plain error, Dalalli must demonstrate: "(1) an error (2) that is plain, (3) that affected [his] substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Houston*, 792 F.3d 663, 667 (6th Cir. 2015) (internal quotation marks omitted) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Dalalli pled guilty to three counts of theft of public money, which provides in relevant part as follows:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof . . . [s]hall be fined under this title or imprisoned not more than ten years . . . .

18 U.S.C. § 641. Dalalli appears to assert that fraud can *never* serve as the basis for a conviction under § 641, though he cites no case law for this proposition. On the other hand, the government's theory of this case is clearly based on fraud, not embezzlement or larceny.

Dalalli's arguments to the contrary notwithstanding, the phrase "knowingly converts" incorporates a fraud theory into § 641. *See United States v. McRee*, 7 F.3d 976, 980 (11th Cir. 1993). In *Morissette v. United States*, the Supreme Court recognized that "[t]he history of § 641 demonstrates that it was to apply to acts which constituted larceny or embezzlement at common law and also acts which shade into those crimes but which, most strictly considered, might not be found to fit their fixed definitions." 342 U.S. 246, 266 n.28 (1952). As recognized by this and other courts, the elements of a fraud-based prosecution under § 641 are as follows:

> (1) that the money or property belonged to the government; (2) that the defendant fraudulently appropriated the money or property to his own use or the use of

others; (3) and that the defendant did so knowingly and willfully with the intent either temporarily or permanently to deprive the owner of the use of the money or property.

*McRee*, 7 F.3d at 980; *see also United States v. Delaine*, 517 F. App'x 466, 468 (6th Cir. 2013) (citing *McRee* with approval). So long as there was a sufficient factual basis to establish the above-quoted elements, the district court did not plainly err.

At the guilty plea colloquy, the district court informed Dalalli of the elements of the offenses alleged in Counts 2–4. Dalalli admitted that he had $30,000 in a bank account in Lebanon about which he failed to inform the government when he applied for various benefits. Dalalli further agreed that he "understood if [he] told the government on the forms that [he] had $30,000 in the bank, [he] realized they weren't going to give [him] benefits." DE 181, Guilty Plea Tr., Page ID 1065. Accordingly, there was a sufficient factual basis to accept Dalalli's guilty plea that he had fraudulently appropriated government welfare benefits with the requisite intent, and the district court did not plainly err.

Dalalli's remaining argument that there was an insufficient factual basis that the property belonged to the United States is plainly meritless. The government proffered that HHS funds Medicaid, the Department of Agriculture funds several food stamp programs, and HUD funds housing assistance. The district court did not plainly err in accepting the government's proffer as stating a sufficient factual predicate for Dalalli's convictions for Counts 2–4. *See Mobley*, 618 F.3d at 545 ("We recognize that the district court may determine the existence of the . . . factual basis from . . . a statement on the record from the government prosecutors . . . ." (first alteration in original) (citation omitted)). Because all of Dalalli's claims that there was an insufficient factual basis for his guilty plea fail, so too does his predicate argument about Counts 1 and 5.

**C.**

Dalalli's third argument is that the district court erred in denying his motion to withdraw his guilty plea.

We review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007) (citing *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998)). Dalalli bears the burden of demonstrating that proper grounds exist for granting his motion to withdraw his guilty plea. *Dixon*, 479 F.3d at 436 (citing *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987)).

Federal Rule of Criminal Procedure 11 requires a defendant who seeks to withdraw a guilty plea to "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Rule 11 "allow[s] a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (per curiam) (quoting *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984)). In determining whether a defendant has demonstrated the requisite "fair and just reason," courts consider the following nonexhaustive factors:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) or a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Dixon*, 479 F.3d at 436 (quoting *Pluta*, 144 F.3d at 973). "The relevance of each factor will vary according to the 'circumstances surrounding the original entrance of the plea as well as the

motion to withdraw.'"  *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (quoting

*Triplett*, 828 F.2d at 1197).

The first factor weighs against Dalalli—he did not move to withdraw his guilty plea until

approximately six months after the district court accepted his guilty plea.  "The shorter the delay,

the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a

motion will be more closely scrutinized when he has delayed his motion for a substantial length

of time."  *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (quoting *Triplett*, 828 F.2d at

1197).  For example, in *Dixon*, this court found that a nearly two-year delay "weigh[ed] heavily"

against the defendant, while recognizing that this court has "frequently relied on much shorter

delays for upholding a withdrawal denial."  479 F.3d at 436 (citing *United States v. Durham*, 178

F.3d 796, 799 (6th Cir. 1999) (77 day delay); *Baez*, 87 F.3d at 808 (67 day delay); *United States

v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (55 day delay); *United States v. Spencer*, 836

F.2d 236, 239 (6th Cir. 1987) (35 day delay)); *see also United States v. Giorgio*, 802 F.3d 845,

848 (6th Cir. 2015) (118 day delay).  In this case, Dalalli pled guilty on January 13, 2015, but he

did not move to withdraw his guilty plea until June 14, 2015—two days after his presentence

report was filed and one month before his scheduled sentencing date of July 14, 2015.  The

considerable time that elapsed between Dalalli's plea and his motion to withdraw his plea

supports the district court's decision to deny the motion.

Dalalli contends that although he did not move to withdraw his guilty plea until

June 14, 2015, he had been contemplating such a motion since a March 18, 2015 meeting with

Springstead and his probation officer, at which time Dalalli asserted that he was forced to plead

guilty.  Dalalli further argues that he "did not move for an earlier withdrawal as he was under a

misapprehension as to the outcome of the proceedings relating to himself and his wife" and that

"[o]nce that was made clearer to him he asked for a change of counsel and to withdraw his plea." Appellant Br. at 50. With these statements, Dalalli appears to state that he didn't decide to move to withdraw his guilty plea until he saw his PSR. This explanation is not only unpersuasive but also invalid. As Dalalli recognizes in his own brief, Rule 11 does not "allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Ellis*, 470 F.3d 275, 280–81 (6th Cir. 2006) (citation omitted); Appellant Br. at 44. The circulation of Dalalli's PSR, with its projected Guidelines range of 24 to 30 months' imprisonment, cannot be a valid reason for his failure to move for withdrawal earlier even if it served to clarify the "outcome of the proceedings." PSRs are designed to aid district courts in fashioning sentences that are sufficient, but not greater than necessary, to punish defendants for the crimes committed. Defendants are not permitted to plead guilty and then use their PSR to their advantage in seeking to withdraw a guilty plea. *See United States v. Poole*, 2 F. App'x 433, 438 (6th Cir. 2001) (finding the district court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea in part "because courts more closely scrutinize motions to withdraw guilty pleas which follow significant delays and *potential review of presentence reports*" (emphasis added)).

Neither does the third factor favor Dalalli, even though he currently asserts his innocence. During the guilty plea colloquy on January 13, 2015, Dalalli fully admitted his guilt while under oath. He now argues that "he changed his plea due to exhaustion and pressure on him to plead." Appellant Br. at 50. The record is devoid of any such exhaustion or pressure. For example, the district court asked Dalalli at his plea hearing, "Do you feel like anybody is trying to force you into this against your will?" DE 181, Guilty Plea Tr., Page ID 1061. Dalalli answered, "No." *Id.* The court further asked Dalalli whether "in your own mind you're gambling that maybe if

you plead guilty, something good will happen for your wife?" *Id.* Dalalli responded, "Yes." *Id.* Throughout the course of the colloquy, the district court explained the elements of each count and asked Dalalli specific questions to establish a factual basis, as discussed above. In one exchange, the court asked, "So you decided not to tell them about [the bank account in Lebanon] because you wanted to get the money?" *Id.* at 1065. Dalalli responded, "Okay," but this did not satisfy the court. *Id.* The court clarified, "Is that true or not true," to which Dalalli answered, "Yes, yes, yes, yes." *Id.* The trial transcript of the guilty plea colloquy firmly establishes that Dalalli knowingly pled guilty and that he admitted his factual guilt. Later, during interviews for the PSR, as early as March 18, 2015, Dalalli changed his story and asserted his innocence to his probation officer. However, Dalalli did not declare his innocence to the court until April 13, 2015, during the hearing on Springstead's motion to withdraw as counsel, and he did not move to withdraw his guilty plea until June 14, 2015. "[C]laims of innocence are not convincing when the defendant has vacillated over time." *United States v. Carpenter*, 554 F. App'x 477, 482 (6th Cir. 2014). In an analogous situation, this court held that a defendant who admitted his guilt at the plea hearing and did not reassert his innocence until sentencing had not demonstrated the "vigorous and repeated protestations of innocence [that would] support the denial of a motion to withdraw a guilty plea." *Baez*, 87 F.3d at 808–09. Dalalli has equivocated on his actual innocence and took months to assert his innocence to the district court. At best, this is a neutral factor for Dalalli, not a beneficial one.

Dalalli argues that the fact that he changed his plea after his trial had begun proves that the circumstances underlying his guilty plea favor the subsequent withdrawal of his guilty plea. Bare assertions of "exhaustion and pressure on him to plead," Appellant Br. at 50, when the record is actually replete with statements by the district court that counseled Dalalli against

pleading guilty, do nothing for Dalalli's argument on this point. Moreover, Springstead stated that "I've made it clear to Mr. Dalalli that I'm ready, prepared to go with trial as the Court can see. And I told him I would finish the trial and do my best for him. And he's made his decision that this is what he wants to do." DE 181, Guilty Plea Tr., Page ID 1061. If there was any pressure on Dalalli to plead guilty, it was pressure he put on himself.

The fifth and sixth factors weigh somewhat in Dalalli's favor. He is a refugee from Iraq and emigrated to the United States from Lebanon in 2005. He is not a native English speaker and has had only limited exposure to the American criminal justice system. At the same time, however, as recognized by the district court, Dalalli was a naturalized citizen, meaning he had to demonstrate an understanding of the history and operation of the government of the United States. This understanding may have provided Dalalli with a relatively better understanding of the justice system than others. And the district court clearly attempted to inform Dalalli of the consequences of his actions and to explain to him the court proceedings. As a further example, the district court exhaustively explained to Dalalli that by pleading guilty to Count 5, he would be stripped of his naturalized citizenship. Nevertheless, Dalalli is certainly not a sophisticated career criminal with extensive experience with the criminal justice system. These factors weigh in his favor.

As for the final factor, whether the government would be prejudiced if the motion to withdraw were to be granted, Dalalli contends that there is no prejudice to the government. This statement is suspect. Merely forcing the government to present its case at trial presents no prejudice in the first instance, but the posture of this case is not so straightforward. Dalalli did not plead guilty until after the government was fully prepared for trial and had finished presenting the first day of its case. Dalalli's motion to withdraw his guilty plea came six months

after he pled guilty. With the passage of time, witnesses' recollections may fade, and even with the power of subpoenas, the government may be unable to secure some of its witnesses. In a case such as this, where the government was prepared for trial six months earlier, after a number of continuances were granted, the government would have been prejudiced had the district court forced it to re-prepare for trial.

Reviewing the relevant factors, we conclude that Dalalli has not met his burden of offering "a fair and just reason for withdrawing his guilty plea." *See Dixon*, 479 F.3d at 437. Therefore, we affirm the judgment of the district court.

**D.**

The ultimate reasonableness of a criminal sentence has both a procedural and a substantive component. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Melton*, 782 F.3d 306, 312 (6th Cir. 2015). As a general matter, we review a defendant's sentence for reasonableness under an abuse of discretion standard. *Gall*, 552 U.S. at 40–41. In this case, Dalalli challenges his sentence on both procedural and substantive grounds.

In reviewing a sentence for procedural reasonableness, we will find that a district court abused its discretion if it:

> commit[s] [a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence— including an explanation for any deviation from the Guidelines range.

*Gall*, 552 U.S. at 51. Dalalli argues that his sentence was procedurally unreasonable because his offenses should not have been grouped in the manner that resulted in one additional offense level. Since Dalalli failed to object to his Guidelines calculation before the district court, we

review this claim for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).

Generally speaking, the Sentencing Guidelines group counts that involve "substantially the same harm" into a single group for the purpose of determining the applicable offense level. U.S.S.G. § 3D1.2. "Counts involve substantially the same harm . . . [w]hen the offense level is determined largely on the basis of the total amount of harm or loss . . . ." U.S.S.G. § 3D1.2(d). Thus, the district court grouped together Counts 1 (for conspiracy), and 2–4 (for theft of public money). Section 3D1.2 specifies that a conviction under § 2L2.2 is not to be grouped. Section 2L2.2 applies to "fraudulently acquiring documents relating to naturalization, citizenship, or legal resident status for *own use*," including offenses committed under 18 U.S.C. § 1425. U.S.S.G. § 2L2.2 (emphasis added). Accordingly, the district court grouped separately Dalalli's conviction on Count 5 for unlawful procurement of naturalization, which had the effect of adding a point to Dalalli's offense level. According to the text of the Guidelines, therefore, the district court did not plainly err in grouping Counts 1–4 separately from Count 5.[3]

Dalalli contends that, notwithstanding the text of the Guidelines, because "all five counts were 'closely related,'" they should have been grouped together. Appellant Br. at 55. Dalalli cites no case law to support this proposition. In point of fact, we "must follow the clear and unambiguous language of the Sentencing Guidelines when interpreting and applying specific provisions," and therefore, Dalalli's procedural argument fails. *See United States v. Young*, 266 F.3d 468, 484 (6th Cir. 2001).

---

[3] Section 2L2.1, which is not subject to § 3D1.2(d)'s exclusion from grouping, applies to "trafficking in a document relating to naturalization, citizenship, or legal resident status, or a United States passport; false statement in respect to the citizenship or immigration status *of another*; fraudulent marriage to assist alien to evade immigration law." U.S.S.G. § 2L2.1 (emphasis added). Dalalli's conviction for Count 5 thus clearly falls under the purview of § 2L2.2, not § 2L2.1.

Dalalli further argues his sentence is unreasonable because it gives too much weight to the extra offense level that resulted from the district court's grouping under U.S.S.G. §§ 3D1.2(d) and 2L2.2, going so far as to assert that the court "erroneously applied the clear Sentencing Guidelines." Appellant Br. at 56–57. Dalalli is mistaken: the district court *correctly* applied the clear and unambiguous Guidelines. That Dalalli is dissatisfied that the Guidelines mandated a base offense level of 17, rather than 16, does not render his sentence unreasonable. Even if the Guidelines had provided that Dalalli be given a total offense level of 16, his Guidelines range would be 21 to 27 months' imprisonment; his sentence of 27 months' imprisonment is within that range. The district court properly heeded the Supreme Court's direction that "the Guidelines should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49. Before it pronounced his sentence, the court explained that Dalalli's total offense level was 17, and with his criminal history category of I, his Guidelines range was 24 to 30 months' imprisonment. After hearing no objections from either party, the court heard argument from Springstead, Dalalli himself, and the government. Next, the court expressly considered both Dalalli's motion for a downward variance and the government's suggestion that an upward variance may be appropriate. It is clear that the district court committed no "significant procedural error"—indeed, the district court made no procedural error, either in calculating Dalalli's Guidelines range or in the weight it assigned the Guidelines. *See Gall*, 552 U.S. at 51.

In determining whether a sentence is substantively reasonable, we begin by recognizing that "[d]istrict courts enjoy discretion in sentencing." *United States v. Guthrie*, 557 F.3d 243, 256 (6th Cir. 2009). We then "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. Substantively reasonable sentences are "proportionate to the seriousness of the circumstances of the offense

and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (internal quotation marks and citations omitted).

Dalalli's sentence is not disproportionate to the seriousness of the crime, nor is it greater than necessary to comply with 18 U.S.C. § 3553(a). *See Vowell*, 516 F.3d at 512. After the district court delivered the 27 months' imprisonment sentence, it spent considerable time explaining its rationale. Specifically, the court addressed its dissatisfaction with Dalalli's changing position on his guilt, his lack of acceptance of responsibility, and its concern that Dalalli might reoffend in the future. Although the district court did not specify which § 3553(a) factors it relied on, there is no requirement that it engage in "the ritual incantation of the factors." *United States v. Jeross*, 521 F.3d 562, 583 (6th Cir. 2008) (citations omitted). In light of his changing story, the length of time during which the fraud occurred in this case, and the total loss amount, the district court did not abuse its discretion in denying Dalalli's motion for variance and sentencing him to 27 months' imprisonment.

## CONCLUSION

For the reasons discussed above, we affirm the judgment of the district court.